# Beitman *v.* Steiner Bros.

98   241
143   578

*Action on Promissory Note, with Common Counts.*

1. *Certificates of stock of corporation issued on fictitious increase of capital stock, void.*—Certificates of stock in a corporation issued upon the basis of a fictitious increase of its capital stock, when there is no increase of its capital, are utterly void.

2. *Same; only excess over real capital void.*—Where an excess of stock certificates over the real capital of a corporation has been attempted

[Beitman v. Steiner Bros.]

to be authorized and issued, the law does not avoid the entire issue, but the vitiating operation of the constitution, (Art XIV, § 6.) is confined to the fictitious excess.

3. *Same; certificates on actual and fictitious capital simultaneously issued.*—Where all the stock certificates are issued and delivered to subscribers at one time, and purport to represent the gross capital—actual and fictitious—the certificate, though not representing its face value, is in part based on actual property, giving the holder the right to share in the income and assets of the corporation in the proportion his certificate sustains to the whole issue, and the whole issue sustains to the actual capital.

4. *Validity of certificates of double the amount of capital represented.* Certificates of stock in corporations issued in double the amount of the actual capital represented by them are not invalid for that cause; and a purchaser of such certificates, who gives his promissory note therefor, with a knowledge of the fictitious increase of shares, and the absence of concealment or misrepresentation, cannot set up a failure of consideration in defense of an action on his said note.

5. *Risk of liability voluntarily incurred by purchaser of certificates issued in excess of capital.*—Though it may be that a writ of *quo warranto* may issue against the persons constituting the corporation for the fictitious increase of stock, or that creditors might call on the stockholders to make good the differance between the actual capital and such increase; these are risks voluntarily assumed by a purchaser with knowledge of the facts relating to such issue.

6. *Case at bar; completed transaction.*—The contract here sued on involved no illegal act on the part of the plaintiff, or the defendant. Whatever illegality may have existed by the excessive issue of stock, a part of which was sold to the defendant, was fully accomplished before said sale, and the enforcement of the contract does not rest upon the original illegality, or proof of the previous transaction forbidden by law.

7. *Not unlawful to agree to purchase controlling interest in corporation.* It is not, *per se*, unlawful for a number of persons by previous agreement to buy shares of corporation stock for the purpose of controlling its policy and electing its officers.

APPEAL from Birmingham City Court.

Tried before the Hon. W. W. WILKERSON.

This was a suit brought by Steiner Bros. against J. Beitman to recover the amount alleged to be due on a promissory note given by defendant for certain shares of the capital stock in the Birmingham, Powderly & Bessemer Railroad Company. The defendant filed nine pleas. Demurrers were interposed to these pleas, and the present appeal presents for review the rulings of the court upon the demurrers. The demurrer was overruled as to the second plea, and issue was joined thereon. By the first plea the defendant set up, by way of set-off, the damages sustained by the alleged breach of a contract, or of the duty arising out of a contract, to the effect that Steiner Bros. should, with the defendant, so manage the Birmingham, Powderly & Bessemer Street Railroad Company as would benefit the defendant and plaintiffs; and that plaintiffs conspired with B. Steiner,

[Beitman v. Steiner Bros.]

who was the president of the corporation, to have the corporate property placed in the hands of a receiver, when there was no occasion therefor, in which they were successful; and that the stock which plaintiff sold the defendant was valueless, as the result of such arrangement. The substance of the 3d, 4th, 5th, 6th, and 9th pleas is sufficiently stated in the opinion. The 7th plea sets up that the stock for which the note was given was a part of the stock purchased by plaintiffs, together with the defendant and others, under an agreement between the plaintiffs, the defendant, and others, to obtain the majority of the stock in the Birmingham, Powderly & Bessemer Street Railroad Company, in order that they might control the election of officers of said company, and to control and manage it for the benefit of the plaintiffs. The 8th plea sets up that, of the 53 shares for which the said note was given, 40 were issued by said company to one E. Lesser, without consideration, which fact was known to plaintiffs, or without money or anything else of value, and transferred by E. Lesser to plaintiffs, and by plaintiffs to defendant, as a part consideration of said note; and that the remaining shares, 13 in number were originally issued to one Vincent Loveless, without consideration, which fact was known to plaintiffs, and by him transferred to the plaintiffs, and by plaintiffs to defendant, as a part consideration of said note; and that all of said shares of stock, as pledged by the defendant to plaintiffs, at the time of the execution of said note, were never in fact delivered to said defendant. The plaintiffs interposed several grounds of demurrer to these several pleas. Some of the grounds of each demurrer were sustained to each of said pleas. The grounds of demurrer to the first plea, which were sustained by the court, show that the act of plaintiffs in having said company placed in the hands of a receiver might have been for the best interest of said company and the stockholders thereof, for aught that appears in said plea, and that it did not appear that there had been any breach of the alleged agreement between the plaintiffs and the defendant. The grounds of demurrer in the 3d, 4th, 5th, 6th, and 9th pleas, which were sustained, were, in substance, that the facts set up in said pleas did not show either want of consideration or illegality in the contract, and that defendant had the right to buy plaintiffs' stock which had been fraudulently and fictitiously issued to them, if he chose to do so, and if there was no fraudulent misrepresentation of the facts to the plaintiffs. The grounds of demurrer to the 7th and 8th pleas were, in substance, that the transac-

[Beitman v. Steiner Bros.]

tions set up therein were not illegal·in themselves; but, if they had been, the giving of said note was only collateral to the transaction; and that it appears that the defendant fully understood all the facts existing at the time the purchase of stock was made.

MOUNTJOY & TOMLINSON,·WARD & JOHN, for appellant.

CABANISS & WEAKLEY, for appellee.

[NOTE—No briefs came into the hands of the Reporter.]

McCLELLAN, J.—This is an action by Steiner Bros. against Beitman. The complaint as amended contains a count on a note executed by defendant to plaintiffs and common counts for money paid, &c., for money due by account, and for money due by account stated. Of these, only the first count is important as the questions reserved for our consideration arose on the sufficiency of certain pleas which went to the cause of action laid specially therein.

The main question is presented on the following facts which are set up in the pleas and relied on as showing the absence of consideration for the promise sued on : The defendant purchased from the plaintiffs fifty-three shares of the capital stock of the Birmingham, Powderly and Bessemer Street Railroad Company, of the par value of fifty dollars per share and executed to them the note sued on for the price thereof which appears to have been about 50 per cent. of the face value of the shares. The authorized capital stock of the company was one hundred thousand ($100,000) dollars, and this amount was subscribed by plaintiffs and others, but before the certificates were issued the stockholders met and resolved to increase the capital stock of the concern to two hundred thousand ($200,000) dollars and to divide out the additional shares among the original subscribers so that each subscriber to the original capital of $100,-000 would receive double the number of shares he had subscribed, and (presumably) paid for, the increase being in the nature of a bonus for which nobody paid anything. The certificates issued to plaintiffs and sold to defendant by them were of this, the only, issue of stock made by the company. Plaintiffs knew the foregoing facts, indeed had participated in the proceedings by which the certificates of shares had been doubled without any increase in the capital of the corporation, when they sold their shares to the defendant; and the latter also, it is to be presumed, from the absence of any

negation of knowledge in the plea, knew that the stock he purchased of the par value of $2650, represented only half that sum in actual capital. There can, of course, be no doubt that the fictitious increase of the capital *stock* of the corporation, adding as it did not one penny to its *capital* could not under our laws afford a predicate or basis for the issuance of certificates of shares beyond the capital actually subscribed and paid or to be paid in; and that in so far as the certificates which were issued are rested upon or purport to represent capital beyond the $100,000 actually subscribed and paid, they are utterly void. But where there has been an excess of stock certificates over the real capital of a corporation, attempted to be authorized, and issued, our laws do not avoid the entire issue. The vitiating operation of the constitutional provision is confined to the fictitious excess; the language is: "All fictitious increase of stock or indebtedness shall be void."—Consts. Art. XIV, § 6. Where the excess of certificates beyond the actual capital is issued separately from the certificates which truly represent that capital, where, in other words, subsequent to the issuance of certificates which are authorized, the stock is increased without a corresponding increase of the capital itself, and certificates thereof are issued, such certificates are void, but the original certificates are as valid for all purposes as if the fictitious increase had not been attempted at all; and the holders of them are entitled to share in the business and assets of the concern accordingly. Nor can it be material that such holders have also subscribed for and taken worthless certificates—the viciousness of the one would not impair the validity or value of the other. Where, however, as on this case, the fictitious increase is formally authorized before any stock is issued and all of the certificates are issued and delivered to the subscribers at the same time and purport to represent and rest on a gross capital equal in amount to the actual and fictitious capital combined, it is, of course, impracticable to separate the good from the void certificates or to say that any particular certificate of stock is solely based on actual capital, or on feigned capital only, and therefore is wholly good or wholly bad. Yet while in such case no certificate can be said to represent its face value, or to entitle the holder to share in the incomes and assets of the corporation to the full extent of the amount it purports to evidence, on the other hand, it is equally clear that such certificate is in part based upon actual property and represents in some amount actual capital in which the holder has a right to share in the proportions his certificate sustains to the whole

issue and the whole issue sustains to the actual capital. It is certain on the facts disclosed in these pleas that $100,000 had been paid in and was held by the corporation as its capital. It is equally clear that this fund belonged to the holders of the $200,000 of shares to the same extent and in the same sense it would have belonged to them had no fictitious increase of shares been attempted to be authorized and actually issued. It is manifest too that the several interests of the stockholders in this fund is determinable by reference to the number of shares of stock they respectively hold just as if the whole issue was in all respects valid; the sum of the shares held by each marks the extent of his interest and is his muniment of title. Precisely double the number of authorized certificates having been issued to each subscriber for the stock, the relative share of each subscriber in the corporate capital is neither increased nor diminished by the duplication. Each has the interest he controlled and paid for, albeit it may appear by the face of the paper evidencing his interest that the fund is twice what it really is, and hence nominally that his aliquot share thereof is double his real interest. In other words, each subscriber agreed to receive and did receive two shares worth 50 per cent. of their face value instead of one share at par. It was so with the plaintiffs. The defendant knew all the facts relative to the fictitious increase of shares. He knew that the certificates plaintiffs offered to sell him were based on an actual capital amounting to only 50 per cent. of the nominal capital represented in part by those certificates, and in view of these facts he purchased plaintiff's stock at *fifty cents on the* dollar. There was no concealment, no misrepresentation. He received precisely what he contracted for and agreed to pay for; and the certificates which were transferred or were to be transferred to him entitled him to exactly the same interest in the corporate capital as between himself and the other stockholders and the company as if there had been no duplication of shares and he had paid the sum of money he agreed to pay for one-half the shares of stock he received. The facts alleged fall far short of showing that there has been any want or failure of consideration in whole or in part for the note sued on. Possibly the fictitious increase might afford grounds for a writ of *quo warranto* against the persons purporting to form and constitute this company, but even in that event the defendant would be entitled to the share in its property which is represented by the certificates he purchased. Possibly, also, creditors of the corporation might call upon the stockholders to make good the difference be-

tween the actual capital and that represented by the ficti-
tious increase of its stock; but, if so, this is a liability which
the defendant voluntarily and knowingly assumed, and ex-
emption or freedom from it constituted no part of the con-
sideration for the promise upon which this action is based.
In any aspect of the facts and in every contingency, which
may arise upon the whole consideration for defendants prom-
ise has moved to him, and he must pay therefor unless,
notwithstanding he has received what he bought, it would
be against public policy to enforce his obligation to pay for
it.

And in this connection it is insisted that inasmuch as the
stock which constituted the consideration for the note was
issued in violation of the constitution it was an illegal con-
sideration, and though of the precise actual value contem-
plated by both parties to this transaction, it can not support
defendant's promise to pay.  The position is not well taken.
The contract sued on neither in itself or in its completest
effectuation involved any illegal act on the part of the plain-
tiffs or the defendant.  The excessive issue of stock, which
is the only illegal act brought to light in these pleas, was
fully accomplished before this sale to the defendant.  The
plaintiff's right to enforce defendant's obligation to pay for
the property sold to him does not depend upon proof of this
excessive issue or any other illegal transaction.  The right
is wholly apart from the alleged illegality.  In such case the
rule is that notwithstanding the prior consummated illegal
transaction out of which may have resulted an infirmity in the
subject-matter of the sale going to lessen its value though
even that is not true as between these parties, the contract
of sale and purchase will be enforced since the right to do
so does not rest upon the original illegality and may be ef-
fectuated without proof of the previous transaction which
the law forbade.  The case is clearly within the test declared
by this court for determining whether a contract attacked
for illegality is capable of enforcement, of which it is said
that the inquiry "is whether the plaintiff requires the aid of
an illegal transaction to support his case.  If he does not—if
he has rights originating in a transaction not offensive to
law—and has a right of recovery independent of an illegal
transaction, such transaction, though he may have partici-
pated in it can not be employed to defeat him."— *Ware v.
Curry*, 67 Ala. 274, 283; *Smith v. Dinkelspiel*, 91 Ala. 528, 531.
And the same doctrine is thus declared by Judge Story:  "If
any act in violation of either statute or common law be al-
ready committed, and a subsequent agreement be entered

into, which, though founded thereupon, constitutes no part of the original inducement or consideration of the illegal act, such an agreement is valid."—Story on Const. § 760. And to the same effect and illustrative of the principle are the following authorities.—2 Kent's Com. 588; *Buck v. Albu*, 26 U. S. 184; *Randon v. Toby*, 11 How. 493; *Thornbury v. Harris*, 3 Cold. (Tenn.) 163. This case is clearly distinguishable in the matter under consideration from that of *Williams v. Evans*, 87 Ala. 725. The enforcement of the contract there sued on necessitated and involved the doing of an illegal act. The plaintiff had subscribed for stock in a corporation which undertook to issue five dollars of stock for every dollar of its actual capital. Before the stock was issued, however, "plaintiff sold $1,000 (or ten shares) of the original stock and gave the defendant *an order* on the corporation *to issue to defendant fifty shares* of said company's stock which was the amount called for by the $1,000 of original subscription, and to transfer the same to the defendant on the books of the company." The sale of this stock *to be issued*, the illegal issuance being necessary to a consummation of the contract of sale, was held invalid, the decision being expressly put on this ground, and the court saying: "A contract which contemplates the violation of a statute, or a constitution, as a mode of executing such contract, is illegal and void. It is based on an unlawful consideration, and, if executory, can not be enforced." In the case at bar, the contract is not executory—the defendant has received the certificates of stock which he bought; it did not contemplate the violation of any law as a mode of its execution, and no law was violated in its execution. It differs from the contract involved in the case referred to in the two matters upon which that case was decided, that is it is not based on any unlawful consideration and it was not dependent upon any act subsequent to its being entered into for consummation. The demurrers to the pleas which set up want and failure of consideration and illegality of consideration were properly sustained.

These pleas and the demurrers to them presented the main, if not the only real issue which arose on the pleadings. Little need be said of the rulings on demurrers to other pleas. The first plea was patently bad in failing to sufficiently aver a damnifying breach of the contract it attempts to set up. The seventh plea was bad in that it does not appear from its averments that the agreement upon which reliance is had was an illegal agreement. It is not *per se* unlawful for a number of persons by previous agreement to buy shares of the stock of a corporation for the purpose of

[Creagh v. Tunstall.]

controlling its policy, electing its officers, &c. The carrying out of such agreement may indeed be most advantageous to the corporation and all its stockholders; and it does not appear by this plea but that such was the effect of this agreement.

The eighth and last plea is bad in that notwithstanding the stock plaintiff purchased may have been originally issued to Lesser and Loveless by the company without consideration, it may yet have not been fictitious stock in whole or indeed to any extent, but to the contrary may have represented in some amount actual capital, and therefore have been of some real value—sufficient at least to support defendant's promise to pay for it, made, it is to be assumed since there is nothing in the plea to the contrary, with full knowledge of all the infirmative facts alleged in the plea.

We find no error in the second, and the judgment must be affirmed.

Affirmed.