FRED. ESGEN, Appellant, v. E. C. SMITH, C. E. LOFLAND, AND THE HAWKEYE FUEL COMPANY, Appellees.

Stock Subscriptions: PAYMENT: *Contracts between stockholders.* An agreement between the stockholders of a corporation that the money and property received from them by the corporation shall discharge their liability on stock subscriptions is valid as. between themselves.

CONTRIBUTION BETWEEN STOCKHOLDERS: *Loss by buying above par.* Where the stockholders of a corporation have agreed that the money and property received from them by the corporation shall discharge their liability on stock subscriptions, a stockholder who has voluntarily paid more than par for his stock in discharge of such liability cannot compel his co-stockholders,. who have paid less than par, to contribute such amount as will equalize his loss from his investment in the stock, result-- ing from the insolvency of the corporation.

*Refund by corporation.* A stockholder who has voluntarily paid' more than par for his stock in discharge of his obligation. on stock subscription cannot compel the corporation to refund. the sum he has paid in excess of the par value.

*Appeal from Mahaska District Court.*—HON. D. RYAN,. Judge.

SATURDAY, JANUARY 19, 1901.

SUIT in equity for an accounting between the stock-- holders of a corporation, and to compel defendant stock-- holders to pay for the stock subscribed for by them. The trial court found that plaintiff was entitled to judgment. against the corporation for the sum of $500, with interest, and directed the officers thereof to apply certain money then in the treasury of the corporation to the satisfaction of the judgment. Both parties appeal, but, as plaintiff has desig- nated himself "appellant," he will be so called in this opin- ion.—*Affirmed* in part and *reversed* in part.

*L. C. Blanchard* for appellant.

*Seevers & Bryan* for appellees.

DEEMER, J.—In November of the year 1895 articles of incorporation were drawn up and signed for the purpose of organizing a corporation to be known as the "Hawkeye Fuel Company." They were signed by the defendants Smith and Lofland and another, who never had any interest in the concern. Some time after the articles were prepared defendants Lefland and Smith secured a lease of 80 acres of coal land in Marion county, by the terms of which the lessor was to make improvements on the leased land to the extent of $300, and the lessees were to pay a minimum royalty of $1,200 per year. After the lease was made, Smith and Lofland in their individual capacity borrowed from the lessor the sum of $1,500 with which to equip the mine, executing their joint and several note therefor. Down to this time nothing had been done toward the organization of the corporation save the drafting and signing of the articles as hitherto stated. After the transactions above related had taken place, W. Esgen, father of plaintiff, agreed to join Smith and Lofland in the mining enterprise, and to take an equal number of shares with them in the corporation; and it was then arranged that each should take thirty shares of the stock to be issued by the corporation. It was further agreed that Esgen should be president, Smith vice-president, and Lofland secretary. Esgen was desirous of helping his son, the plaintiff, and it was decided that twenty-five of the shares of stock should be issued to him, the son, and five to Esgen, Sr., in order that he might act as president. Pursuant to this agreement the shares were issued. Shortly thereafter the Esgens paid for their stock in full:—that is to say, they paid $3,500 in all, or the full par value of thirty shares and $500 which plaintiff claims was his share of the loan that Smith and Lofland had theretofore made of the lessor of the

mining lease, or was a premium on the stock, as the defendants insist. Defendants paid but $1,250 for their shares of stock, the par value of which was $3,000. They claim, however, that they assumed and paid the $1,500 note theretofore executed by them, and that they also expended other sums prior to the organization of the company, amounting in all, with the sums hitherto mentioned, to $4,500 for the sixty shares of stock, or $2,250 each. Defendants also claim that it was agreed between them and plaintiff's father that this was to be in full payment for their stock, and that plaintiff's father became a member on this basis; while plaintiff's father denies that this was the arrangement, and says that each was to put in the same amount in cash,—in other words, pay the full value of the stock. The venture was not a success. It became heavily involved, and the corporate property was finally sold on execution in satisfaction of its debts. There remains in the treasury the sum of $517.14, which is all the property the corporation now possesses. Esgen, Sr., assigned all his stock and all of his interest in and to the company to the plaintiff; and this action is brought for an accounting between Esgen and Smith and Lofland, and to compel them, Smith and Lofland, to pay for their stock such an amount as will equalize the plaintiff's loss from his investment in the stock. The trial court dismissed the petition in so far as it prayed for judgment against Smith and Lofland individually, rendered judgment against the corporation for the sum of $500, with interest, and directed that the remaining property and money belonging to the corporation be applied on that judgment. In support of his position plaintiff's counsel cites cases establishing the "trust-fund" doctrine, and holding that creditors may recover from stockholders of insolvent corporations the amount of their unpaid subscriptions to the capital stock. He also calls our attention to the well-settled rule that, if a stockholder is compelled to pay more than his proportion of the debts of his company, he may maintain a suit against his co-stock-

holders for contribution. Among the cases so cited are *Stewart v. Lay*, 45 Iowa, 604; *Strover v. Flack*, 30 N. Y. 64; Cook, Corporations (4th ed.) section 211; Thompson Corporations, sections 3816-3818, and cases cited. There is no doubt about these rules as abstract propositions. Indeed, the Code seems to establish just such a principle as the one last referred to. See section 1633. The first has no direct application to the case unless it be found that a stockholder is a creditor; but this is not true, except in a general sense. He is evidently not such a creditor as is contemplated in the rule stated. That principle bears some analogy, of course, to the point now under consideration, but is not conclusive. The so-called "trust-fund" doctrine has been carefully reexamined in the recent case of *State Trust Co. v. Turner,* 111 Iowa, 664, and what was there said need not be repeated here. It is sufficient to say that, whatever rule may be adopted, be it the "true-value" or the good-faith one, it is a rule for the benefit of creditors, and not for the advantage of stockholders. The second rule has its origin in the old equitable doctrine that "equality is equity," and that "where there is equality of right, there should be equality of burden." Growing out of these maxims is the rule that a stockholder who has been compelled to pay more than his just proportion of unpaid subscriptions to the capital stock may enforce contribution from the other stockholders who have not paid their just proportion. That this same rule should ordinarily be applied to a case where a stockholder has voluntarily paid more than his just proportion on his subscription to the stock seems clear. There is the same reason here for the application of the equitable doctrines hitherto mentioned as where the payment is enforced by action at the suit of a creditor. The mere fact that the payment is not voluntary is not controlling. But see *Andrews v. Callender*, 13 Pick. 484. That case, even if sound, is readily distinguishable, however, from the one at bar. The parties may, however, control this right by contract; and contribution will never be enforced when it is inequitable.

The parties may vary their liability from that which the law would imply from their relation to the original debt, and such special contract, or any facts affecting or negativing plaintiff's equities, may be proved by parol. Now while the plaintiff claims that the parties were each and all to go in on an equality, and each was to pay in cash the full value of his stock, the preponderance of the testimony seems to support the defendant's contention that it was agreed between them that defendants should pay but $1,250 each in cash, which was done; assume the payment of the $1,500 note; turn over the lease they had obtained for the mining land, which was assumed to be worth $300; and be reimbursed in this manner for the expenditures theretofore made by them. As between themselves they had power to make such an agreement, and, having made it, the extent of their liability on the stock subscribed for by them was fixed. To now enforce contribution would not only abrogate this contract, but would render them liable to plaintiff in the face of an agreement that they should not be liable to the company or to him for more than they agreed to pay. If there was no liability on their part to the company, there was no joint obligation; and, there being no joint obligation, there can be no contribution. If it be said, however, that plaintiff, having paid liabilities of the corporation to creditors, is subrogated to their rights, and is entitled to recover unpaid subscriptions to the capital stock, the ready answer is that he knew when he paid them, of the contract between the corporation and the stockholders, that the corporation should receive what it did in fact receive in full satisfaction of their subscriptions. *State Trust Co. v. Turner, supra.* But for this agreement, which we think is fairly established by the evidence, plaintiff would be entitled to contribution. In the face of that, however, he is not entitled to recover from the other stockholders.

II.   The judgment rendered by the trial court seems. to have been based on the theory that, as the corporation could not lawfully compel the plaintiff to pay more than par for his stock, the excess over the par value is held by it on an implied promise to repay the same to plaintiff.   The general rule, no doubt, is that, after the full par value of stock subscribed for has been paid, the common-law liability of the stockholder, both as respects the corporation and its creditors, is at an end.   But this rule has reference to ordinary subscriptions to capital stock, or to calls or assessments made tnereon, and not to the price that the parties may voluntarily put thereon as among themselves.   Stock may be sold at a premium, the same as any other commodity, as we understand it.   But, if that be not true, the plaintiff voluntarily paid his $3,500 in discharge of his obligation, and there is no promise, express or implied, on the part of the corporation, to refund the $500 paid in excess of the par value of the stock.   The plaintiff received the equivalent that he expected in exchange for his money, and the mere fact that the corporation received a benefit therefrom beyond what it could have enforced on an ordinary contract of subscription to its capital stock does not give plaintiff a right of action against the corporation.   It was, therefore, under no obligation to return the $500.   On plaintiff's appeal the judgment is AFFIRMED, and on defendants' appeal it is. REVERSED.