**M. Gould BEARD, Plaintiff,**

v.

**Norman A. PIERSON, Defendant.**

**Civ. No. 67–466.**

United States District Court
W. D. Oklahoma.

May 29, 1968.

Clyde A. Muchmore and Wm. G. Paul of Crowe, Dunlevy, Thweatt, Swinford Johnson & Burdick, Oklahoma City, Okl., for plaintiff.

Charles R. Nesbitt and Robert Naifeh, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff seeks herein to recover a judgment against the defendant for the sum of $58,000.00 based on three written instruments executed between them. These instruments are brief and will be set out in full in footnote 1.[1] Plaintiff contends that for $58,000.00 paid by him, he was to receive direct from the defendant an agreed number of shares of common stock in Las Americas, Inc.; that the defendant has failed to make delivery of said stock to him; that a reasonable period of time has passed since the execution of said agreements for the defendant to deliver said stock and that by virtue of this default on the part of the defendant the plaintiff is entitled to rescind said agreements and recover the

---

[1].
Phoenix, Arizona
Oct. 30, 1965

Received from M. Gould Beard American Airlines Credit Union Check # 265427 drawn on the Manufacturers Hanover Trust Company and endorsed to Norman A. Pierson for the amount of Five Thousand Dollars ($5,000.00) in payment for one thousand (1,000) shares of Las Americas, Inc. common stock, when issued. As security, until the stock is issued, I offer an equivalent value of my cultivatible ranch land in Oklahoma. This contract terminates on delivery of aforementioned stock of Las Americas, Inc. to M. Gould Beard. Signed—Norman A. Pierson

Norman, Oklahoma
Nov. 30, 1965

Received from M. Gould Beard a Merrill Lynch Pierce Fenner and Smith check (#0489060) for ($3000) Three Thousand Dollars endorsed to Norman A. Pierson in payment for six hundred (600) shares of Las Americas, Inc. common stock, when issued. As security, until the stock is issued, I offer an equivalent value of my cultivatable (sic) ranch land in Oklahoma. This contract terminates on delivery of aforementioned stock of Las Americas, Inc. to M. Gould Beard. OK Norman A. Pierson.

San Antonio, Texas
Feb. 16th, 1966

Received from M. Gould Beard ($50,000.00) Fifty Thousand Dollars in payment for (10,000) Ten Thousand shares of common stock of Las Americas, Inc. now owned by me. Stock to be delivered at the time certificates are printed for public offering.
Norman A. Pierson
N. Pierson

money he paid to the defendant by a judgment in this case against the defendant in the amount of $58,000.00.

The defendant presents several defenses. The first is that since the $58,000.00 was ultimately received and used by Las Americas, Inc., the plaintiff should look to said corporation for his stock and not to this defendant. As a further defense, that the defendant had a subscription for stock with said corporation which he assigned in part to plaintiff and that plaintiff should look to Las Americas, Inc., for his stock under said subscription and not to this defendant. Defendant also contends that it was the intent and agreement of the parties in the execution of the three instruments involved herein that the plaintiff was to get his stock direct from Las Americas, Inc., and, in no event, to get the same direct from the defendant.

Prior to the non-jury trial herein the defendant contended that the three instruments involved herein were ambiguous and that the Court should receive parol evidence to arrive at and determine the true intent and agreement of the parties. At the start of the trial and out of an abundance of caution, the Court announced that in view of the contentions of the defendant the Court was holding that the instruments were ambiguous and that parol evidence would be received with reference to the intent and meaning of the parties in the execution of said agreements. 17 Am.Jur.2d, Contracts, Section 273, page 683.

██ The evidence discloses that the defendant and one George D. Miers entered into an agreement dated October 15, 1965, whereby each was to convey certain of their respective real and personal property free and clear of liens and encumbrances to a joint venture to be known as Miers-Pierson and that on October 16, 1965, Las Americas, Inc., at its first meeting of stockholders by resolution agreed to issue 1,000,000 shares of ten dollar par value common stock of Las Americas, Inc., to Miers and Pierson for the delivery of the said joint venture property free and clear of liens or encumbrances to said corporation. At the same meeting the par value of the corporation common stock was reduced from $100.00 per share to $10.00 per share. The corporation did not at that time or at any subsequent time authorize and direct the issuance of any of its common stock to either the public or any other people other than Miers and Pierson on the aforesaid basis except Miers and Pierson were each issued five shares for their corporate organizational expenses and effort. The Directors of the corporation in their sole discretion and on terms serving the best interests of the corporation were authorized to sell or option, at not less than par value, 100,000 shares of corporate stock to personnel selected by the Directors entering the employment of the corporation but the Directors never exercised this authority. The corporation thereafter took no action to further reduce the par value of its stock from $10.00 to $1.00 per share even though at one time it appears that a prospectus was put together calling for $1.00 par value stock for public offering, but no corporate action was ever taken with reference to the said prospectus or a public offering. The plaintiff, as shown by the three agreements involved, was to receive Las Americas, Inc., common stock at the rate of $5.00 per share rather than its par value of $10.00 per share.[2] Thus, Las Americas, Inc., did not at any time take corporate action to authorize or direct the issuance of its common stock to the public or to the plaintiff or to anyone else except to the defendant and George D. Miers and never took corporate action to reduce the par value of its stock below the $10.00 figure. The evidence further discloses that the plaintiff for a period of time worked for Las Americas, Inc., in the capacity of Vice President for which he

2. At the trial the plaintiff testified that the defendant later verbally agreed to deliver Las Americas, Inc., stock to the plaintiff under the three agreements on the basis of three shares for $10.00 instead of only two shares for $10.00.

received a certain sum of money. Also, that George D. Miers advanced money to Las Americas, Inc., for its operating expenses which advancements were independent of the contemplated transfer of the said joint venture property by Miers and Pierson to Las Americas, Inc. And that the defendant generally matched the said Miers cash advancements to Las Americas, Inc., for the same purpose and that he did this in large part, if not entirely, by the monies supplied by the plaintiff for which the plaintiff seeks recovery herein. The evidence reveals that the property of the defendant which he was by said agreement with Miers to transfer to the joint venture and then to Las Americas, Inc., was not at any time free and clear of liens or encumbrances but was heavily encumbered and remains in this condition at the present time. Neither the defendant nor Miers nor their joint venture has conveyed the said property to Las Americas, Inc., as contemplated by the said corporate resolution of October 16, 1965, and neither has received any common stock from Las Americas, Inc., except the said five shares issued to each for other reasons. It is an elementary legal proposition, recognized and admitted by all at the trial, that Las Americas, Inc., may not legally issue its common stock to anyone except upon receiving in payment therefor its par value either in cash or property of equivalent value. Thus, it would not be legally permissible for the plaintiff to obtain directly from Las Americas, Inc., its common stock by initial issue with a par value of $10.00 by paying therefor to Las Americas, Inc., the sum of only $5.00 per share of stock. On the other hand, it would be legally permissible for the defendant to sell and deliver to the plaintiff common stock of Las Americas, Inc., for any agreed figure, above or below par value, after he had first legally acquired the same from the company for a cash or property consideration of value equal to the par value thereof. It is a general principle of law that a contract if ambiguous will be construed to make it legal rather than illegal. 17 Am.Jur. 2d, Contracts, Section 254, page 647.

The Court finds and concludes from the evidence presented that it was the intent and agreement of the plaintiff and the defendant in the execution of the three instruments sued on herein that for the said sum of $58,000.00 paid by the plaintiff to or on behalf of the defendant the plaintiff was to receive Las Americas, Inc., common stock direct from the defendant and not direct from Las Americas, Inc. The Court further finds and concludes that the plaintiff had his understanding and agreement with the defendant and not with Las Americas, Inc. The agreements themselves so reflect. Moreover, it would have been illegal for the plaintiff to have obtained directly from Las Americas, Inc., its common stock by paying therefor only one-half of the par value thereof. The Court further finds and concludes that the use made by the defendant of the $58,000.00 paid to or on his behalf by the plaintiff is not controlling in a determination of this case inasmuch as the defendant as far as the plaintiff was concerned was free to do what he pleased with the money and the defendant himself elected to place it or most of it in Las Americas, Inc., for the obvious purpose of matching cash advancements to the corporation made by his joint venturer George D. Miers. In addition, the Court finds that because the plaintiff at one time worked for Las Americas, Inc., is not material to the issues herein for whatever he was paid for such work was in return for his personal services rendered Las Americas, Inc., and moreover, there is no evidence that the Directors of Las Americas, Inc., took any action to issue or authorize the issuance to plaintiff of any common stock of the corporation for or in connection with his employment. The Court further finds that it is also immaterial to a determination of this case that most or even all of the said $58,000.00 was actually used in the operations of Las Americas, Inc., for the reason that this was done directly and

only at the direction and decision of the defendant and he was, as stated above, free to do with this money as he pleased. In this connection, the first two payments by the plaintiff were deposited in the defendant's personal bank account and it is quite clear from the signed letter of the defendant of February 4, 1966, with reference to the third and last payment by the plaintiff, that it was to be deposited to Las Americas, Inc., at his direction and for his benefit and for his own personal purposes.

■ The Court further finds and concludes that the defendant's position that he was assigning a part of his subscription rights to the plaintiff is without sound legal or factual basis. In the first place, a customary subscription agreement has not been presented to the Court, it being the contention of the defendant that the corporate resolution of Las Americas, Inc., to issue certain of its common stock to the defendant and Miers in exchange for their transferring free and clear the said joint venture property to the corporation constitutes a stock subscription. But whether the offer of Miers and Pierson as joint venturers and the corporate resolution constitutes a subscription to capital stock is not important for the Court finds and concludes from the evidence that it was not within the intent and agreement of the parties to this litigation in the execution of the three instruments sued on herein that any portion of any such stock subscription, if it may be treated as such, was considered as being assigned to the plaintiff by the defendant in return for the said $58,000.00. Rather, the Court finds and concludes from the evidence that it was the intent and agreement of the parties hereto that the plaintiff was to receive Las Americas, Inc., a common stock directly from the defendant after the same had been issued to the defendant by Las Americas, Inc., pursuant to the corporate resolution and was to receive the same at one-half of its par value and cost to the defendant. In fact, the defendant testified that the plaintiff was to get Las Ameri-

cas, Inc. stock that was issued to the defendant by Las Americas, Inc.

■ The full amount involved herein was paid by the plaintiff by February 16, 1966. Over two years have passed since this money was paid and as of the time of the trial the defendant has not conveyed his property to Las Americas, Inc., free and clear of liens or encumbrances and has not received from Las Americas, Inc., any of its common stock except the above mentioned five shares. It also appears from the evidence that the property of the defendant which was to have been transferred to Las Americas, Inc., is still heavily encumbered and is incapable of being transferred as required by the said corporate resolution. In these circumstances, the Court finds and concludes that a reasonable period of time has passed in which the defendant should have performed his part of the agreement between the parties and attained the position of being able to deliver to the plaintiff the Las Americas, Inc., common stock as agreed. The Court will add that it is of the opinion and, therefore, finds, that from the evidence presented it is highly doubtful that the defendant will in the foreseeable future be able to transfer the agreed assets to Las Americas, Inc., free and clear of all liens or encumbrances and thereby obtain some of its common stock for delivery to the plaintiff and thereby comply with the instruments involved herein. The Court, therefore, finds and concludes that the defendant has failed to perform his agreements with the plaintiff, such failure defeats the object of the agreements, such failure of performance is of such a nature and of such importance that the plaintiff would not have made the agreements without expecting to receive the common stock of Las Americas, Inc., from the defendant in a legal manner and through the fault of the defendant the consideration for his obligation fails in whole and in a material respect. Plaintiff is, therefore, entitled to rescind the said agreements. 15 Oklahoma Statutes § 233; G. A. Nich-

ols, Inc. v. Hainey, 190 Okl. 245, 122 P. 2d 809, 139 A.L.R. 967.

Plaintiff, therefore, should have judgment against the defendant rescinding the three agreements involved, and recover from defendant the sum of $58,000.00 with interest from the date of judgment and costs. Counsel for the plaintiff will prepare an appropriate judgment to this effect and present the same to the Court for signature and entry herein.