679 P.2d 1144

**LaRue C. BELT and Ann B. Belt, husband and wife, Plaintiffs-Respondents,**

v.

**Larry F. BELT and Kristie Belt, husband and wife; Christopher Belt; and Belbro, Inc., an Idaho corporation, Defendants-Appellants.**

**No. 14299.**

Court of Appeals of Idaho.

April 10, 1984.

Thomas A. Mitchell, Coeur d'Alene, for defendants-appellants.

Michael J. Newell, Coeur d'Alene, for plaintiffs-respondents.

WALTERS, Chief Judge.

Larry and Kristie Belt, Larry's son Christopher and Belbro, Inc., appeal from a district court judgment dissolving Belbro, Inc. The judgment ordered Belbro's net assets distributed according to the capital contributions of Larry Belt and his brother LaRue Belt, rather than according to stock ownership, in order to avoid unjust enrichment of Larry. The appellants argue that Idaho law requires distribution of corporate assets according to stock ownership. They contend that unjust enrichment is not applicable here because the parties had an agreement which implicitly covered distribution of assets. Also, they assert that Larry Belt's capital contribution should include the reasonable value of the time and efforts which Larry contributed to the business. We agree the district court erred in applying the unjust enrichment approach and we reverse on that point. We uphold, however, the court's finding that Larry failed to prove his capital contribution included the value of any time or effort devoted to the business.

### I. The Facts

The district court found the following facts. LaRue Belt owned two large parcels of property which he wanted to develop for mineral extraction and timber sales. In 1973, he invited his brother, Larry, to join him in the effort. LaRue was to contribute the real property to the enterprise and Larry was to manage the enterprise.

Efforts to develop the land began in October, 1973, before the corporation was formed. At that time, Larry moved into the residence of LaRue and Ann Belt. A joint checking account was established for the business, in which proceeds of timber sales were deposited. To this account LaRue also deposited the proceeds of loans, which he borrowed in his individual capacity. The account was used to purchase tools and equipment. However, it was also used to pay the personal expenses of both

parties; After Larry married Kristie in 1975, they purchased a mobile home, using funds from the account.

LaRue testified that both he and Larry had intended to incorporate their business from the beginning, in part to escape individual liability. LaRue planned to put his property into the corporation to give it an operating base. He intended that Larry would manage the development of the property. However, LaRue also testified that he did not know how a corporation functioned or what rights he would retain as a shareholder. He also testified that he did not understand that, by transferring title to his property to the corporation (half of the stock of which was issued to Larry and Kristie), he potentially was giving up a half interest in his transferred assets.

In September, 1975, the brothers and their wives incorporated their business enterprise. Each brother received 10,000 shares and a corporate promissory note for $2500. Each of their wives received 5000 shares and the corporation's note for $1250.

LaRue transferred title to his two parcels of real property to the corporation. According to appraisals made later, LaRue's real property was worth $68,900 in 1973. Larry transferred title to his 1967 Ford Bronco. The parties agree that the vehicle was worth $1000. In addition, title to tools and equipment, purchased between October, 1973 and September, 1975 for use in the enterprise, was transferred to the corporation. As noted, these purchases had been financed in part with personal loans which LaRue negotiated from various lenders and for which LaRue was personally liable. The proceeds of sales of timber from LaRue's two parcels also financed part of these purchases.

The records of business transactions which occurred after October, 1973 were very incomplete. Neither party attempted to record any of the business transactions in a ledger until after this suit was brought. Only cancelled checks, check stubs, bank deposits and some log scale slips could be found to aid in tracking the

expenditures and income of the corporation. At trial, testimony that a substantial number of purchases were paid for with cash was undisputed. Because the payments were made in cash, and records of these transactions were usually not kept, the amount and nature of these transactions could not be determined accurately. The nature of transactions which were paid for by check could usually be determined by the nature of the business of the payee. However, some checks were made out to "cash", or to LaRue or Larry, who cashed them. Other checks were made payable to payees from whom both business and personal purchases were made. Also, other than bank deposits and some log scale slips, no records were kept of income received by the corporation or of its accounts receivable.

In 1977, the corporation ran out of money. Larry suggested that the corporation sell some of its land. LaRue objected. Eventually, LaRue brought this action, requesting dissolution of the corporation and return of the property which he had contributed to the corporation. Larry agreed that the corporation should be dissolved, but argued that distribution of the corporate assets, following dissolution of the corporation, should be made according to the proportionate ownership of the stockholders. In opposition, LaRue argued that Larry would be unjustly enriched by a distribution based on stock ownership.

The district court ordered dissolution of the corporation. The judge ordered that all creditors be paid. He then turned to the question of distributing the remaining corporate assets between the parties. The court concluded that distribution "in strict accordance with the stockholdings would result in unjust enrichment of the defendant Larry Belt." Therefore, the district court ordered distribution of the remaining corporate assets "in proportion to the capital contributions made by each to the corporation at the time of its formation."

The district court then determined that Larry Belt could not be given credit, as a contribution to capital, for services he had

rendered to the corporation.[1] The court explained that there was no agreement between LaRue and Larry, or between the corporation and Larry, regarding the payment of salary or wages to Larry. The court noted that Larry had not proved that his services had enhanced the value of any corporate property. Finally, the court found that Larry had not shown the reasonable value of the services which he had rendered, or that the value of those services exceeded the value of the personal expenses which the corporation paid for him.

The court thus limited Larry's participation in the distribution of the corporate assets to the proportionate interest resulting from his contribution of the $1000 vehicle. The court determined that in proportion to their investments—the $1000 vehicle plus the $68,900 parcels of land—Larry should receive $\frac{1}{70}$ and LaRue should receive $\frac{69}{70}$ of the remaining corporate assets, after satisfaction of corporate debts and liabilities.

As noted, the court chose to distribute the assets of the corporation according to the contribution of the parties because, in the court's view, a distribution based on the respective stockholdings would result in an unjust enrichment of Larry. The court recognized, that in exchange for their capital contributions, each of the Belt brothers had received 10,000 shares of stock and each of their wives had received 5000 shares. In essence the court treated LaRue and Larry as the owners of 15,000 shares of stock each. In addition, the court found that Larry had purchased 2500 shares from his son, Christopher, giving Larry voting control of the corporation.

The decision of the district court to avoid unjust enrichment by declining to order distribution based upon the number of shares owned by the stockholders overlooked a basic premise relating to those shares. The court apparently assumed that all shares of stock were validly issued

to the stockholders. In this regard, we conclude, the court erred.

## II. The Validity of Larry's Shares

Usually a share of a corporation represents the right to participate, equally with other shares, in control of a corporation, in the profits of the corporation, and, upon dissolution, in the corporate assets. Business Corporation Act, 1929 Idaho Session Laws ch. 262, § 1 at 546 (formerly I.C. § 30–101(6), repealed by 1979 Idaho Session Laws ch. 105, § 1 at 254); H. HENN, LAW OF CORPORATIONS § 157 at 289 (2d ed. 1970). However, to gain this status, the shares of the corporation must be issued in compliance with the applicable provisions of the Idaho Constitution and the Idaho Code.

Article XI, § 9 of the Idaho Constitution provides that "[n]o corporation shall issue stocks or bonds, except for labor done, services performed, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." The Idaho Legislature elaborated on this constitutional provision in the Business Corporation Act, 1929 Idaho Session Laws, ch. 262, § 13 at 554 (formerly I.C. § 30–120, repealed by 1979 Idaho Session Laws ch. 105, § 1 at 254) which was in force during the time Belbro, Inc. was formed and was in operation. That section provided, in part:

1. No allotment of shares of a corporation shall be made except:

a. Pursuant to subscriptions received therefor; . . . .

III. Subscriptions for shares having a par value shall be made payable:

a. With cash to an amount not less than the aggregate par value of the shares subscribed for; or,

b. With consideration other than cash, the fair valuation of which to the corporation is not less than the aggregate par value of the shares subscribed for.

---

1. The district court stated, in its opinion, that LaRue Belt could not be given credit for services provided to the corporation. However, Larry Belt was the brother who provided services to the corporation and who sought credit for services rendered. LaRue only provided money and property. We assume that the district court simply misspoke.

. . . .

V. No corporation shall issue stocks or bonds except for labor done, services performed, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void.

Thus, shares carrying par value could not be issued for cash or other valid consideration less than the aggregate par value of those shares. In this case, Larry gave only $1000 in valid consideration for 15,000 shares having a par value of $.25 each—an aggregate par value of $3750. The question then is whether these shares should be deemed void.

Our research discloses only one decision of the Idaho Supreme Court, similar to the instant case, which addresses the issuance of stock for a cash amount which was less than par value. *See Yreka United, Inc. v. Harrison,* 95 Idaho 430, 510 P.2d 775 (1973). There the trial court had determined that an issuance of stock was invalid. The trial court's ruling was affirmed on appeal. However, the Supreme Court's opinion is unclear whether the trial court was upheld on the ground that the stock had been issued at less than par value, or because the stock had been issued in violation of a statute relating to pre-emptive rights of other stockholders.

Other courts have determined that shares issued in violation of provisions similar to Article XI, § 9 and former I.C. § 30–120 are void as a violation of public policy.[2] *See Hirshfeld v. McKinley,* 78 F.2d 124 (9th Cir.1935); *Beard v. Pierson,* 305 F.Supp. 134 (W.D.Okl.1968); *Ong Hing v. Arizona Harness Raceway, Inc.,* 10 Ariz.App. 380, 459 P.2d 107 (1969) (remanding for a finding on the fairness of the consideration); *Overlock v. Jerome-Portland Copper Mining Co.,* 29 Ariz. 560, 243 P. 400 (1926); *State v. Iowa So. Util. Co. of Del.,* 231 Iowa 784, 2 N.W.2d 372 (1942); *Bell Isle Corp. v. MacBean,* 30 Del.Ch. 373, 61 A.2d 699 (1948); *Evans v. Ideal Brick*

and *Brikcrete Mfg. Co.,* 287 P.2d 454 (Okl. 1955); *Lee v. Cameron,* 67 Okl. 80, 169 P. 17 (1917); *Chilson v. Cavanagh,* 61 Okl. 98, 160 P. 601 (1916); *Rolapp v. Ogden & N.W. Ry. Co.,* 37 Utah 540, 110 P. 364 (1910); *Frey v. Geuder, Paeschke & Frey Co.,* 4 Wis.2d 257, 90 N.W.2d 765 (1958).

However, the rule of voidness does not invariably apply in Idaho. In *Jensen v. Aikman,* 32 Idaho 261, 181 P. 525 (1919), a creditor of a corporation brought suit against a shareholder to recover the difference between the value of the consideration given and the par value of the shares issued. Shares of a corporation had been issued to Aikman for services he rendered to the corporation and for the right to use his name. The consideration for the shares was allegedly worth ten percent of the par value of the stock issued. Our Supreme Court decided that "[t]he transaction . . . did not constitute an increase of stock . . ., and while an agreement that the stock was not to be paid for . . . may be void, the subscription is valid and the stockholder's liability is binding." 32 Idaho at 265, 181 P. at 526. The court cited *Meholin v. Carlson,* 17 Idaho 742, 107 P. 755 (1910). However, *Meholin* stands for the proposition that a promissory note, with a face value in excess of the par value of shares for which it was given, is "property" within the meaning of Article XI, § 9. Stock issued in exchange for that note was not a fictitious increase of stock. 17 Idaho at 764, 107 P. at 762.

We do not believe that *Meholin* provides support for *Jensen.* We do believe that, taken together, both cases stand for the proposition that, as between a shareholder who has not paid par value for his shares and an innocent creditor, the shareholder cannot escape liability for that portion of the par value which remains unpaid. The Legislature enacted this principle into law. *See* The Business Corporation Act, 1929 Idaho Session Laws ch. 262, §§ 15 and 16

---

**2.** Although the invalidity of the stock in this case, as being issued in violation of public policy, was not raised or determined below, we are not precluded from considering this question on

appeal. *See Nab v. Hills,* 92 Idaho 877, 452 P.2d 981 (1969); *Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833 (1952).

at 556 (formerly I.C. §§ 30–123 and 30–124 (1967), respectively; both repealed by 1979 Idaho Session Laws, ch. 105, § 1 at 254). Because this case does not involve a creditor's claim, these authorities are not controlling.

We believe the voidness rule should apply to disputes between shareholders or between shareholders and the corporation. A contrary holding would render the constitutional and statutory provisions regulating the issuance of stock for less than par value meaningless as a practical matter. Rather, we should adopt a construction which does not deprive those provisions of their meaning. *Smith v. Department of Employment*, 100 Idaho 520, 602 P.2d 18 (1979).

The next question, in applying the rule of voidness, is whether the issuance of shares to Larry and Kristie is void in its entirety or only as to those shares in excess of the valid consideration given. As noted, Larry and Kristie received 15,000 shares of stock, having a par value of $.25 per share, or $3750 total par value. For these shares, Larry contributed property which the parties valued at $1000. At trial, answers to interrogatories propounded to each of the parties were admitted in evidence. In her answers, Larry's wife Kristie stated that she invested nothing into the corporation in exchange for the 5000 shares issued to her. Therefore those shares are void. IDAHO CONST. art. XI, § 9; former I.C. § 30–120.

In respect to the remaining 10,000 shares issued to Larry, we believe it would be harsh and unfair to deprive a shareholder of the entire interest in a corporation reflected by the issuance of stock for less than par value. The better rule would be that only the excess stock, issued over a payment of less than par value, is void.

> [W]here certificates of stock are not altogether fictitious, but merely in excess of the amount paid in, as where they represent shares fully paid for, and also additional shares, for which no consideration has been paid, so that they are fictitious as to the latter only, they are void, not altogether, but only as to the shares not paid for.

11 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5240 (rev. perm. ed. 1971), *citing Beitman v. Steiner*, 98 Ala. 241, 13 So. 87 (Ala.1893) *and Mackie Pine Products Co. v. Fredericks*, 148 La. 687, 87 So. 712 (1921). *See also Frey v. Geuder, Paeschke & Frey Co.*, 4 Wis.2d 257, 90 N.W.2d 765 (1958). Thus, for his $1000 investment, Larry validly holds 4000 shares (at $.25 par value each), originally issued by the corporation.

In addition, upon conflicting evidence the trial court found that Christopher Belt had acquired 2500 shares in the corporation. He paid $750 for those shares; they were thus issued for more than par value. Christopher subsequently sold his shares to his father, Larry. Therefore, adding these shares to the shares Larry owned as a result of his initial investment, Larry owns 6500 shares in the corporation.

As a related issue, Larry argues that the services he rendered to the corporation should be considered part of his contribution to capital. He contends the parties had agreed that Larry would "work his way into the deal." Larry alleges that this agreement was fully performed. He implies that, before the corporation was formed, he "worked his way" into a one-half ownership of the corporation, and, at dissolution, into a right to share in one-half of the assets. However, the district court found that Larry had not proved the value of the services he rendered, or that the value of his services exceeded the value of the benefits which he received from the business, either before or after the corporation was formed. The court implicitly found that Larry had been fully compensated for his services, and that Larry had not performed services, the value of which exceeded the value of compensation that he received, which would earn him an equity position in the business. The court also implicitly found that the agreement had not

been fully or partially performed and that Larry had not earned an equity position in the business. These findings are not clearly erroneous and they will not be disturbed. I.R.C.P. 52(a); *Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982). We also note that under the present statute, I.C. § 30–1–19 and its predecessor, *see* Business Corporation Act, 1929 Idaho Session Laws, ch. 262, § 13 at 554, consideration for the issuance of shares can not consist of services to be rendered after the shares are issued.

### III. LaRue's Shares

LaRue contributed to the corporation land valued at $68,900. He received, in exchange, 10,000 shares of stock and his wife Ann received 5000 shares.[3] At $.25 per share, the total par value of the 15,000 shares of stock was $3750. Therefore the value of the land given for the stock exceeded the par value of the stock, and the shares of stock were not issued in violation of the constitution or relevant statute.

■ However, LaRue gained no advantage by virtue of his payment of more than par value of the stock.

> [A] stockholder, who has voluntarily paid more than par for his stock in discharge of his obligation on his subscription, cannot recover back the excess from the corporation, if the payment was not made under a mistake; nor can he recover from the other stockholders, although they may have paid less than par under an agreement between the corporation and all the stockholders.

11 *Fletcher, supra* § 5183, *citing Esgen v. Smith,* 113 Iowa 25, 84 N.W. 954 (Ia.1901).

### IV. Distribution of Corporate Assets

■ We now turn to whether the court was limited to distributing the assets to shareholders in proportion to their stock-

holdings, after satisfying the claims of creditors, or whether it could order dissolution on another basis. Larry cites *Clow v. Redman,* 6 Idaho 568, 57 P. 437 (1899) for the proposition that, upon dissolution, corporate assets must be "distributed among the stockholders according to the amount of stock held by each." 6 Idaho at 573, 57 P. at 439. This proposition is reflected in I.C. § 30–1–98, in effect when dissolution of the corporation was ordered in this case. That section provides:

> [T]he assets of the corporation or the proceeds resulting from a sale, conveyance or other disposition thereof shall be applied to the expenses of such liquidation and to the payment of the liabilities and obligations of the corporation, *and any remaining assets or proceeds shall be distributed among its shareholders according to their respective rights and interests.* (Emphasis added.)

The shares of stock, referred to in *Clow,* represent the "rights and interests" of the shareholders as owners of a corporation, referred to in § 30–1–98. Upon dissolution, the interest of each shareholder becomes a vested equitable right to an aliquot, pro rata distributive share of the corporate assets. 16A *Fletcher, supra* § 8224 (rev. perm. ed. 1979); *see also* HENN, LAW OF CORPORATIONS § 382 (2d ed. 1970).

■ As noted, the district court invoked an equitable principle of unjust enrichment to avoid distribution of the corporate assets according to stock interests. It appears the court misapprehended the stock interests of each party—deeming Larry to own 17,500 shares when in fact he held only 6500 valid shares. It is also clear that LaRue gained, in law, no advantage for the overpayment for his 15,000 shares of stock. While we recognize that corporate dissolution proceedings are fundamentally equitable in nature, 16A *Fletcher, supra* § 8034.1 (rev. perm. ed. 1979), the ad-

---

3. In her answers to interrogatories, admitted in evidence, Ann stated that she received her shares of stock in exchange for her community

property interest in the land transferred by LaRue to the corporation. This evidence is unrefuted.

justed stockholding interest of each party in this case is not, in our opinion, sufficient to invoke the equitable principle of unjust enrichment as against the statutory, and generally accepted, method of distribution of the assets according to the pro rata share interests of the parties. We therefore reverse the judgment of the district court, with directions to order distribution of the corporate assets, after payment of the corporate debts and liabilities, according to the respective shares of the parties as stated herein. Costs to appellant Larry Belt.

BURNETT and SWANSTROM, JJ., concur.