510 P.2d 775

**YREKA UNITED, INC., Plaintiff-Appellant,**

v.

Phyllis W. HARRISON, Executrix of the Estate of Grace G. Harrison, Deceased,

and

Richard G. Magnuson, Administrator of the Estate of Lester S. Harrison, Deceased, Defendants-Respondents.

No. 11057.

Supreme Court of Idaho.

May 15, 1973.

Rehearing Denied June 21, 1973.

terclaimed, alleging that if the stock be ordered returned the appellant was indebted to the respondents on a series of five promissory notes, for principal and interest, a reasonable sum for attorney fees provided in said notes, and other sums paid towards the stock. Appellants generally denied the allegations of the counterclaim and, as an affirmative defense to the counterclaim asserted misrepresentation in the issuance of the promissory notes.

The cause was tried to the court sitting without a jury. The trial court made findings of fact, conclusions of law and entered judgment. The judgment ordered that the 400,000 shares of stock be returned by respondents to the appellant. The court also entered judgment in favor of respondents on the promissory notes for the principal balance of $44,492.26, accrued interest in the amount of $35,062.28 to date of judgment, $8,000 as attorney fees, and $6,135.22 without interest, which latter sum represented part of the consideration paid for the 400,000 shares of stock.

Appellant filed its motion to amend the findings, conclusions of law and judgment or in the alternative for a new trial, which motion was denied. Appellant has appealed from the judgment, and from the order denying its motion to amend or for new trial. For the reasons hereinafter expressed, this Court affirms the judgment and order of the trial court denying the motion to amend or for new trial.

Lester S. Harrison, during his lifetime, was an attorney at law, practicing at Kellogg. He engaged in an extensive practice involving a number of mining corporations, and he was instrumental in arranging the merger in 1957 of a number of mining corporations into Yreka United, Inc., the appellant herein. He also managed Equity Metals, Inc., a corporation which provided office space and transfer offices for vari-

Hull, Hull & Wheeler, Wallace, for plaintiff-appellant.

Brown, Peacock, Keane & Boyd, Kellogg, for defendants-respondents.

McFADDEN, Justice.

Yreka United, Inc., the plaintiff-appellant, instituted this action seeking return of 400,000 shares of its stock issued to Phyllis W. Harrison,[1] as the administratrix of the estate of Lester S. Harrison, deceased. The defendants-respondents generally denied the allegations of appellant's amended complaint. In the alternative, they coun-

---

1. As initially filed, the action named as a defendant Grace G. Harrison, individually and as administratrix of the estate of Lester S. Harrison, deceased. Sometime later, Grace G. Harrison died, and a substitution of defendants was made, so that Phyllis W. Harrison, executrix of the estate of Grace G. Harrison, deceased, and Richard G. Magnuson, administrator of the estate of Lester S. Harrison, deceased, are the defendants-respondents herein.

ous corporations, handled their stock transfers and performed bookkeeping and general office work for them.

In 1956 Lester S. Harrison was a director and officer of appellant and served as its president and director from 1959 until his death on April 15, 1966. Following his death, Phyllis W. Harrison, the daughter of Lester S. Harrison, served as president and director, and Grace G. Harrison, the widow of Lester S. Harrison served as a director.

The question of remuneration to Lester S. Harrison for his legal services in effecting the mergers of the other corporations with appellant was considered by appellant's board of directors on various occasions during the period of 1957 to 1964. On May 27, 1957, appellant's board of directors, at a special meeting considered the question of remuneration to Harrison for the services he had performed in effecting the merger of the companies. Under a tentative arrangement Harrison received 50,000 shares of appellant's stock with the understanding that a committee of the directors would investigate into the work Harrison had performed, and then later settle on the amount he was to be paid. It was understood that Harrison would return the 50,000 shares of stock when the final agreement was reached.

On July 8, 1957, the directors, at another special meeting again considered the question of Harrison's compensation. The pertinent parts of these minutes disclose the following action being taken:

"* * * As stated in the prior minutes, Mr. Harrison did not feel that this was adequate compensation, and a reservation had been made that he could return for cancellation the said 50,000 shares of stock if a more suitable arrangement could be worked out. Mr. Harrison now suggested that he be allowed a straight cash fee for $50,000; that he was aware of the fact that the corporation was unable to retire the obligation at this time and stated that he did not desire the entire amount paid during any one year, but that the same could be retired over a period of years * * *. That he would like to have the obligation placed in the form of promissory notes with interest not to exceed 6% and that he be given the privilege of returning to the treasury the 50,000 shares of stock formerly tendered him. After consideration and a review of everything that Mr. Harrison had done, and that he was receiving no promotion stock in any manner for his services performed, it was believed that he was justly entitled to receive the $50,000 cash fee in the form of corporation notes as suggested * * *. Whereupon the following resolution was introduced, to-wit:

'RESOLUTION

BE IT RESOLVED that Mr. Lester S. Harrison, Attorney at Law, of Kellogg, Idaho, be allowed a fee of $50,000 in cash for his services in perfecting this corporation and creating and bringing about a merger of the several properties in the Wardner area; that the payment thereof be deferred and promissory notes be given and issued him such as he may require, and that he be permitted to return to the treasury the 50,000 shares of stock formerly tendered him.

BE IT FURTHER RESOLVED that the president and secretary be and they hereby are authorized, ordered and directed to execute said notes for and on the part of this corporation by signing thereto the corporate name and affixing thereto the corporate seal, and that when executed, they deliver the said notes to Mr. Harrison.'

BE IT FURTHER RESOLVED that they accept for cancellation back into the treasury the 50,000 shares of stock formerly tendered to Mr. Harrison.

BE IT FURTHER RESOLVED that said officers be and they hereby are authorized to take other further necessary and proper steps that may be required in the premises to settle this obligation with Mrs. Harrison.'

A motion was then duly made, seconded and carried, that said Resolution be adopted."

Following this resolution, Harrison returned the stock and the corporate officers issued him five promissory notes worth $10,000 each, due on demand, with 6% interest, and providing for payment of reasonable attorney's fees.

The minutes of the corporation reflect that the directors held a special meeting on May 12, 1964. These minutes reflect that Harrison was granted an option to purchase 400,000 shares of the corporation stock at $.20 per share, and that any unpaid balance of principal and accrued interest on the notes could be credited for the purchase price of the stock under the option. Although the minutes reflect that three of the directors were present, at trial two of the three directors denied any such meeting was ever held. The appellant contends that these minutes were prepared by Harrison, and that there was never any special directors meeting held that day.

On July 15, 1968, over two years after Harrison's death, Mrs. Grace Harrison, the widow, as his administratrix, exercised this option to purchase the 400,000 shares of the stock. The principal and accrued interest on the notes at that time amounted to $73,864.78. That sum was credited against the purchase price, and in addition Mrs. Harrison paid appellant $6,135.22 for the total option price of $80,000.

Four days after exercise of the option, the directors again held a special meeting at which time an investigation into the transfer of the stock under the option was instituted. At this meeting William C. Harrison (the husband of Phyllis W. Harrison and the son-in-law of the late Lester S. Harrison) advised the directors he would bind the estate not to transfer the shares of stock.

The corporation made certain payments on the series of five promissory notes: $900.00 principal on May 28, 1957; $1,606.-68 interest and $3,893.32 principal on March 12, 1960; $1,285.58 interest and $712.42 principal on October 3, 1963.

The first issue raised by appellant's assignments of error focuses on the failure of the trial court to find whether the directors actually held a special meeting on May 12, 1964, when Harrison purportedly received an option to purchase the 400,000 shares of stock. The trial court by its holding did not have to reach this issue. The trial court held that the option agreement was in violation of I.C. § 30–120, subd. 6(c), which in effect prohibits the initial issuance of shares of par value stock for less than par. The trial court found that the option agreement permitted sale of $.50 per share par value stock to Harrison for $.20 per share. The trial court also found the option violated I.C. § 30–120(6) dealing with pre-emptive rights of other shareholders. The trial court found the violation in that the option provided for the sale of the 400,000 par stock to Harrison without first extending the right to the shareholders of the corporation.

The trial court determined that the issuance of the stock pursuant to the option was void. Titus v. Paul State Bank, 32 Idaho 23, 179 P. 514 (1919); Hanny v. Sunnyside Ditch Co., 82 Idaho 271, 353 P. 2d 406 (1960) (pertaining to pre-emptive rights of other stockholders). As to issuance of unissued par value corporate stock for a consideration less than par, see, Frey v. Geuder, Paeschke & Frey Co., 4 Wis.2d 257, 90 N.W.2d 765 (1958); State v. Iowa So. Util. Co. of Del., 231 Iowa 784, 2 N. W.2d 372 (1942); Evans v. Ideal Brick & Brikcrete Mfg. Co., 287 P.2d 454 (Okl. 1955); Belle Isle Corp. v. MacBean, 30 Del.Ch. 373, 61 A.2d 699 (1948). See also, 11 Fletcher Cyc. Corp. (perm. ed., 1971 rev.) §§ 5124, 5200, 5207; Model Bus. Corp. Act, Annot. § 17, ¶ 2.01 et seq.

A trial court in making its findings of fact must find on all material issues before it, but by the same token there is no duty to make findings on issues that are immaterial to the decision. Gould v.

Hill, 43 Idaho 93, 251 P. 167 (1926); Peoples v. Whitworth, 41 Idaho 225, 238 P. 306 (1925); Pleasants v. Henry, 36 Idaho 728, 213 P. 565 (1923). In view of the trial court's holding that the issuance of the stock under the option agreement was void, it became immaterial whether the purported special director's meeting of May 12, 1964, was held.

Continuing with its attack on the trial court's failure to find if the May 12, 1964, special directors meeting was held, appellant contends that Harrison breached his fiduciary duty to the corporation. It is the position of the appellant that Harrison had these minutes prepared, so that he could obtain the stock option to the detriment of the corporation, and thus his estate became liable for any profits derived therefrom. However, in appellant's amended complaint the relief sought was only for the return of the 400,000 shares of stock and "for such other and further relief to which the plaintiff may be entitled." In appellant's reply to respondents' counterclaim for the balance due under the promissory notes, appellant sought to offset against any balance found due under the notes the difference in value between option price and the market price of the stock at the time the option was exercised. The trial court rejected this theory, pointing out and specifically finding that at the time of the exercise of the option, the appellant had other unissued stock that, had it desired, could have been sold. Again, the refusal of the trial court to make a finding regarding the May 12, 1964, special director's meeting becomes immaterial.

It is our conclusion that the trial court did not err in failing to find whether the May 12, 1964, meeting was held.

■ The second issue presented by appellant's assignments of error deals with the trial court's determination that respondents were entitled to judgment on the promissory notes.

According to the minutes of the special meeting of the board of directors on July 8, 1957 (previously set out in this opinion),

a resolution authorized the officers of the corporation to execute promissory notes in payment of the attorney's fee found due Harrison. The directors adopted the resolution in conformity with the discussion as to the payment of Harrison's fee, not by cash, but on a deferred basis. A promissory note executed in the name of a corporation by its president and secretary with the corporate seal impressed, as was the case here, is sufficient to establish *prima facie* the validity of the note. Tacoma Hotel v. Morrison & Co., 193 Wash. 134, 74 P.2d 1003 (1938). In the case, Land Development Corp. v. Cannaday, 74 Idaho 233, 258 P.2d 976 (1953), the Court held that a contract of a corporation is presumed to be within its corporate powers and that the burden of proving such contract to be *ultra vires* is on the party making that assertion. In the instant case appellant failed to carry such burden. We find no error in the court's determination that respondents were entitled to judgment on the promissory notes.

■ The last issue presented on this appeal concerns the provision in the promissory notes that in the event suit was instituted to collect on the notes the corporation agreed to pay reasonable attorney's fees. It is our conclusion that the directors authorized this provision at the July 8, 1957, board of directors meeting. The resolution authorizing the payment of Harrison's compensation by promissory note also provided that "said officers be and they hereby are authorized to take other further necessary and proper steps that may be required in the premises to settle this obligation with Mr. Harrison." As the trial court pointed out in its memorandum opinion, this authorization is broad enough to encompass the execution of a promissory note which contains a provision for payment of attorney's fees in the event suit be brought on the note. See, Scott v. Cord, 75 Nev. 179, 336 P.2d 773 (1959).

■ Finally, appellant contends the amount of the award, $8,000, is unreasonable. We do not agree. After the appellant

rested its case in chief, the parties by counsel stipulated to the effect that if the court determines an attorney's fee should be allowed either party, the court should fix the fee without the introduction of evidence. Under such stipulation there is no need to submit evidence as to the reasonableness of an attorney's fee. The amount to be awarded as attorney fees is generally regarded as being within the sound discretion of the trial court. Werry v. Goodman, 78 Idaho 298, 301 P.2d 1111 (1956); Donaldson v. Josephson, 71 Idaho 207, 228 P.2d 941 (1951). See also, Dykstra v. Dykstra, 94 Idaho 797, 498 P.2d 1270 (1972).

The issues presented by appellant's assignment of error directed to the order of the trial court in denying its motion to amend or in the alternative for a new trial are the same as those previously discussed in this opinion. We find no error in the trial court's order denying such motion.

The judgment of the trial court is affirmed. Costs to respondents.

DONALDSON, C. J., and SHEPARD, McQUADE and BAKES, JJ., concur.