895 P.2d 594

Marvin HINKLE and Mary Ellen
Hinkle, husband and wife,
Plaintiffs–Appellants,

v.

Francis WINEY and Betty Winey,
husband and wife,. Defendants–
Respondents.

No. 20912.

Court of Appeals of Idaho.

May 17, 1995.

994

Gary A. Finney, Sandpoint, for appellants.

John F. Elsaesser, Jr. Sandpoint, for respondents.

LANSING, Judge.

This case involves a dispute over property located in Boundary County, Idaho. The plaintiffs, Marvin and Mary Hinkle, filed suit to compel the defendants, Francis and Betty Winey, to convey the property to the Hinkles pursuant to an alleged oral sale contract. The Wineys filed a counterclaim alleging that the Hinkles were in possession of the property pursuant to an oral lease agreement upon which they had failed to make the required rental payments. Following a court trial the district court entered judgment in favor of the Wineys and ordered that the Hinkles vacate the premises. The Hinkles appeal, asserting numerous errors in the proceedings below and in the district court's ultimate findings of fact. We find that the district court erred in making a monetary award to the Wineys for past due rent, and the case is remanded for amendment of the judgment with regard to this award. In all other respects, the judgment of the district court is affirmed.

## I. FACTS AND PROCEEDINGS

Francis and Betty Winey owned commercial property in Bonners Ferry, Idaho, consisting of a motel in which a restaurant and bakery were operated, and a trailer court that included several rental trailers. The premises are commonly referred to as the Rusteek Motel and Rusteek Pizza Parlor. From approximately 1989 until November 1991, the Wineys' son, David, lived in and operated the motel, restaurant and bakery. Sometime in August 1991, an individual named Bob Highland approached David and expressed interest in buying the property. Highland and the Wineys eventually arrived at an understanding that the property would be sold to Highland for $150,000 if another piece of land owned by Highland could be sold. When this secondary land sale fell through, Highland backed out of the agreement with the Wineys. In the interim, however, Highland had met with the Hinkles, who at the time operated a bakery in Sandpoint, Idaho. They had discussed leasing the Rusteek Bakery premises from Highland if he were to purchase the property. Sometime in late August or early September, after becoming aware that he could not make the purchase himself, Highland asked David Winey if he would accept the Hinkles as purchasers in Highland's stead, under the same terms that had been offered to him. David Winey responded favorably but without a firm commitment. The Hinkles later met with David Winey on a number of occasions, and it is the agreements allegedly reached at those meetings that are in dispute.

According to the Hinkles' testimony at trial, David Winey agreed to sell the property to the Hinkles for $150,000. It was an alleged term of the agreement that the Hinkles would attempt to obtain financing for the entire amount of the purchase price, but in the event they failed in this endeavor, they would assume the Wineys' underlying mort-

gage of approximately $82,000 and pay the Wineys $1,100 per month at ten percent interest until the balance of $68,000 was paid in full.

The Wineys presented a different view of the parties' agreement. Their evidence indicated the agreement was that the Wineys would rent the premises to the Hinkles for a period of six months during which time the Hinkles would attempt to gain financing to purchase the property outright for $150,000. The rental amount was $1,100 per month. David testified that although Mary Ellen Hinkle had asked if the mortgage was assumable, he had never agreed to allow the Hinkles to assume the mortgage or to contract to pay the remainder in installments. David testified that he had no authority to sell the property and had only been given permission to rent the business property to the Hinkles by his father. David also said, however, that he had, in a passing conversation, indicated to the Hinkles that they would be given a credit for the rents paid during the six-month period toward the purchase price. David testified the first rental payment was due in November, but that he had waived the deadline on this payment to ease the financial burden upon the Hinkles in their first month of business. David testified that he told the Hinkles they could make the payment up later.

It is essentially undisputed that on November 9, 1991, Marvin and Mary Hinkle moved into the residence portion of the motel and began operating the restaurant and the bakery. The Hinkles paid $1,500 to the Wineys in December 1991. From January through April 1992, the Hinkles made monthly payments to the Wineys in amounts exceeding $1,100 per month. Each payment, the Hinkles testified, was pursuant to their purchase contract. The amounts in excess of $1,100 per month, they claimed, represented contributions toward principal. The Wineys, however, responded that the amounts over $1,100 were primarily to make up the November 1991 payment.

In May, the Hinkles attempted to make a monthly payment but Francis Winey refused to accept it because the words "property payment" had been written on the check. In June, the Hinkles tendered another monthly payment through their attorney, which was also refused. No further tenders were made. Thereafter, the Hinkles sued the Wineys for specific performance of the alleged sale agreement. They sought a court order directing the Wineys to execute a real estate sale contract to conform with their prior oral understanding. The Wineys, in return, counterclaimed, alleging that the Hinkles were only renting the premises and had failed to pay their rent. They sought to have the Hinkles evicted and to recover unpaid rent.

Following a court trial, the district court found that no contract was ever formed to sell the property and that the Hinkles were month-to-month tenants. The court ordered that the Hinkles leave the property by September 30, 1993, and pay the Wineys any unpaid rent. In this appeal, the Hinkles allege that the district court made several errors during pretrial proceedings, made insufficient findings of fact to support its ultimate decision on the merits and reached findings and conclusions unsupported by substantial and competent evidence. We address each claim of error in turn.

## II. MOTION TO AMEND COMPLAINT

Prior to trial the Hinkles sought leave to amend their complaint to allege causes of action for unlawful entry, assault, battery, conversion, false imprisonment and "wrongful possession." These claims arose out of two incidents. The first occurred in November 1992 when David Winey and others removed from the restaurant all of the bakery and restaurant equipment being used by the Hinkles. The Hinkles were then required to lease new restaurant and bakery equipment in order to keep their business functioning. The second incident involved a March 19, 1993, late night excursion by the Wineys in which they allegedly entered the bakery premises and removed all of the fixtures owned by the Hinkles while holding the Hinkles at gunpoint in their home with the assistance of an off-duty police officer. The Wineys then changed the locks and began operating an appliance repair shop in the area where the bakery and restaurant had been located.

Following this latter incident, the Hinkles filed the motion for leave to amend their complaint to allege the above-mentioned additional causes of action. At a hearing on the motion in May 1993, counsel for the Wineys stipulated that the Wineys would relinquish the premises to the Hinkles until resolution of the lawsuit. Thereupon, the district court concluded that the damages claims asserted in the motion to amend would best be litigated in a separate action and denied the motion to amend. The court cited concern that the amendment would introduce a multitude of new issues, add new parties and delay resolution of the critical question of the parties' rights in the real property. The court expressly pointed out that the Hinkles could pursue the same claims in an independent action. The Hinkles contend that the district court abused its discretion in disallowing the amendment.

■ A party's pleading may be amended pursuant to I.R.C.P. 15(a) at any time in the discretion of the trial court. Although amendments are to be granted with liberality, *Wickstrom v. North Idaho College*, 111 Idaho 450, 453, 725 P.2d 155, 158 (1986), an order denying a motion to amend will not be reversed absent an abuse of discretion. *Bissett v. State*, 111 Idaho 865, 869, 727 P.2d 1293, 1297 (Ct.App.1986).

■ We find no fault with the district court's denial of the Hinkles' motion. The amendment sought by the Hinkles was to state causes of action based upon events that occurred a year or more after the events giving rise to formation of the disputed agreement that was the subject of the original complaint and counterclaim. The evidence that would be offered on the proposed new claims would be entirely different from that necessary for the original causes of action. The proposed amendment would have added parties and opened up new avenues of discovery, almost certainly requiring a delay of the trial. In addition, there has been no showing of any prejudice to the Hinkles from the district court's determination that the new issues would best be resolved in a separate action. Accordingly, we hold that the district court's denial of the motion to amend was not an abuse of discretion.

## III. ORDER FOR INTERIM PAYMENTS

■ During the same May 1993 hearing at which the district court denied the Hinkles' motion to amend, the court also addressed a motion by the Wineys for interim payments. The district court determined that, in the exercise of its equitable powers, it would require the Hinkles to pay $1,100 per month during the pendency of the action since the Hinkles were enjoying the use of the premises without making either a rent payment or a purchase payment to the Wineys. The court ordered that for the period from June 1992 through February 1993, the Hinkles were to pay $900 per month to the Wineys and pay $200 per month into the district court. These sums, totalling $9,900, were to be paid in two lump sum payments to make up the arrearage. For the period from mid-May 1993, through the conclusion of the trial, the Hinkles were to make payments to the Wineys of $500 with the remaining $600 paid into the district court. The months of March and April 1993 were the months in which the Wineys had dispossessed the Hinkles from the bakery premises. For these months the court ordered no payments because the Hinkles were not then in possession of the property.

The Hinkles contend that the court lacked authority to grant this interim relief to the Wineys. We conclude the court did possess such authority upon the particular facts of this case.

■ The equitable remedy of specific performance of a contract is unique. A party seeking specific performance must allege and prove that all conditions precedent to the other party's duty to perform have been satisfied. *Woliansky v. Miller*, 135 Ariz. 444, 661 P.2d 1145, 1147 (App.1983); *Nix v. Clary*, 640 P.2d 246 (Colo.App.1981); *Cohen v. Rasner*, 97 Nev. 118, 624 P.2d 1006 (1981); RESTATEMENT (SECOND) OF CONTRACTS § 363 (1981). Even where the defendant has repudiated the contract and has rejected a proffered tender of payment, the party seeking performance must show it is ready, willing and able to perform its obli-

gations under the contract in the event that specific performance is ordered. *Leaf v. Codd,* 41 Idaho 547, 560, 240 P. 593, 597 (1925); *Norton v. Herron,* 677 P.2d 877, 883 (Alaska 1984); *Woliansky v. Miller,* 661 P.2d at 1147. Here, in order to be entitled to the relief they requested, the Hinkles had to be ready and able to perform their part of the alleged land sale contract.

The Hinkles' complaint acknowledged that their obligation under the alleged sale agreement was to pay for the property by assuming an existing mortgage and paying the balance in cash if financing was available, or alternatively in $1,100 monthly installments. Although the Wineys had previously rejected payments tendered by the Hinkles because the checks bore notations stating they were "property payments," when the Wineys moved for interim payments they conceded that the court could characterize the payments as either rent or as purchase payments at the conclusion of the action, based upon the court's ultimate decision as to whether the parties' agreement had been a lease or a sale contract. By thus expressing their willingness to accept the Hinkles' performance, the Wineys abandoned their previous position of refusing to accept the Hinkles' tender. The Wineys thereby eliminated the condition that had excused the Hinkles' from the obligation to make monthly payments. As the Nevada Supreme Court said in *Cohen v. Rasner,* 624 P.2d at 1008, "A trial court should be certain that if the seller is ordered to [specifically] perform, the purchaser will be able to pay." The district court's order requiring payment satisfied this need for certainty and was consistent with the Hinkles' burden to give assurance of their willingness and ability to perform.

▪ Further, in this circumstance there was a simple equitable basis for the order for interim payments. It was undisputed that payments of $1,100 per month were owed by the Hinkles to the Wineys. Both the Hinkles' complaint and the Wineys' counterclaim allege that obligation. It was not the existence nor the amount of the commitment, but only the characterization of the payment as rent or as a purchase payment, that was in dispute. Hence, under either party's theory,

the Hinkles had an accrued and continuing obligation to pay $1,100 per month. Where, as here, one litigant is withholding payment that is concededly owed to the other, while retaining the benefit (in this case possession and use of business premises) for which the payments were to be consideration, in our view it is within the court's equitable power to order that the payments be made during the pendency of the litigation. Otherwise, the non-paying party would in some circumstances be empowered to economically "starve" its adversary into submission before a resolution of the claims on the merits could be reached.

The Hinkles also argue that this order constituted a preliminary injunction, which could not properly be issued without findings of fact and specification of reasons for the injunction pursuant to I.R.C.P. 52(a) and 65(d) and posting of security pursuant to I.R.C.P. 65(c).

▪ Assuming that the characterization of the order as a preliminary injunction is accurate, we conclude that there was no reversible error. First, the Hinkles' arguments as to the need for factual findings and a particularized statement of reasons have been waived. The district court ordered the Wineys' attorney to prepare the order and submit it to the Hinkles' counsel for his approval as to form. The Hinkles' attorney signed the document indicating that it was "accepted in form." By accepting the order as to form the Hinkles waived any objection to the absence of findings of fact or a statement of reasons in the order. The Hinkles did not at any time complain to the district court that the order was deficient due to noncompliance with the requirements of Rules 52(a) and 65(d). Accordingly, they cannot now be heard to complain for the first time on appeal that the written order was insufficient in these respects. *Sun Valley Shopping Center v. Idaho Power,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991); *Johnson Equipment, Inc., v. Nielson,* 108 Idaho 867, 870, 702 P.2d 905, 908 (Ct.App.1985).

▪ The Hinkles' argument that the order was invalid because it was not conditioned upon the Wineys posting of security is

also without merit. The applicable rule, I.R.C.P. 65(c), provides in part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages including reasonable attorneys fees to be fixed by the court, as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

By terms of this rule, the provision of security is necessary only in such sum as the court finds necessary to secure the enjoined party against loss that may be incurred if it is ultimately found that the preliminary injunction was unwarranted. In this case, there was no risk of any such loss or damage. As explained above, under either party's theory of the case, the interim payments ordered by the district court were concededly owed and, regardless of which party ultimately prevailed following trial, the Hinkles would have been obligated to make those payments to the Wineys. The order for interim payments therefore subjected the Hinkles to no risk of loss or damage under any potential ultimate disposition of the parties' respective claims. Therefore, even if the order for interim payments constituted a "preliminary injunction," there was no error in the court's omission of any requirement for security.

## IV. FINDINGS AND CONCLUSIONS BY DISTRICT COURT

The Hinkles also assert that the ultimate decision of the district court in favor of the Wineys was based upon insufficient findings of fact and inadequate evidence.

### A. SUFFICIENCY OF FINDINGS

■ We address first the Hinkles' contention that the findings of fact and conclusions of law were insufficient as a matter of law. Idaho Rule of Civil Procedure 52(a) requires that in rendering a decision in an action tried without jury, the district court must set forth separately its findings of fact and conclusions of law. The purpose of this rule is to "afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined

whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Only where the basis of the court's ruling clearly appears from the record may this requirement of specific findings be disregarded by the appellate courts. *Id.* The specificity required, however, is not that every factual dispute between the parties must be resolved. Rather, the court's findings need address only those factual issues that are material to resolution of the claims. *In re Estate of Lewis*, 97 Idaho 299, 302, 543 P.2d 852, 855 (1975); *Yreka United, Inc. v. Harrison*, 95 Idaho 430, 433–34, 510 P.2d 775, 778–79 (1973).

■ The findings of fact by the district court in this case were set forth in a brief opinion and order. After noting that the Hinkles bore the burden of proving an oral contract for the sale of real property by clear and convincing evidence, the court found that the Hinkles had not met this burden; that although a possible purchase was discussed, no agreement to sell was ever reached because the terms and conditions were not mutually agreed upon; that David Winey acted as the agent for Francis and Betty Winey in the negotiations; and that the parties agreed to rental of the property for $1,100 per month.

The court also found that the oral real estate contract contended by the Hinkles was not supported by the testimony of Marvin Hinkle or Highland, and that Highland's testimony was in conflict with that of Mary Ellen Hinkle. With respect to witness credibility, the district court stated, "The trial testimony of plaintiff Mary Ellen Hinkle was impeached by her deposition testimony and her trial testimony was itself conflicting and confused. Therefore, she is not a reliable witness."

While these findings do not address every disputed factual issue in the case, they do address the material factual disputes regarding whether David Winey was an agent with authority to bind his parents, whether an agreement to sell the premises was ever reached, and whether the Hinkles were in

possession as owners or as tenants. These findings provide sufficient indicia of the basis for the district court's entry of judgment in favor of the defendant that appellate review is possible. Therefore, the district court's findings comply with the requirements of I.R.C.P. 52(a).

## B. SUPPORTING EVIDENCE

The Hinkles next contend that the district court's findings are not supported by the evidence presented at trial. The findings of fact of a trial court may not be set aside unless clearly erroneous. I.R.C.P. 52(a). The task of weighing evidence is within the province of the trial court, and we accord great deference to the trial judge's opportunity to weigh conflicting testimony and to assess the credibility of witnesses. I.R.C.P. 52(a); *Rueth v. State,* 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982); *Javernick v. Smith,* 101 Idaho 104, 609 P.2d 171 (1980); *Roemer v. Green Pastures Farms, Inc.,* 97 Idaho 591, 593, 548 P.2d 857, 859 (1976). We must accept the trial court's findings if they are supported by substantial, competent evidence, though that evidence may be controverted. *Rueth,* 103 Idaho at 77, 644 P.2d at 1336; *Watkins v. Watkins,* 76 Idaho 316, 281 P.2d 1057 (1955). Our review of the trial court's findings is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Johnson v. Edwards,* 113 Idaho 660, 662, 747 P.2d 69, 71 (1987); *Dalton v. South Fork of Coeur d'Alene River Sewer District,* 101 Idaho 833, 836, 623 P.2d 141, 144 (1980); *Morris v. Frandsen,* 101 Idaho 778, 780, 621 P.2d 394, 396 (1980).

 The substantive law governing this case was set forth in the district court's opinion. Ordinarily an oral contract for the sale of land is unenforceable. I.C. §§ 9–503, 9–505(5). An exception exists where the party seeking enforcement can show part performance consistent with the asserted contract. I.C. § 9–504; *Bob Daniels and Sons v. Weaver,* 106 Idaho 535, 542, 681 P.2d 1010, 1017 (Ct.App.1984). Only where the partial performance is referable solely to the existence of the contract, however, does this exception apply. *Id.; International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507, 511 (Ct.App.1984). Consequently, where the alleged part performance can be explained as consistent with some other purpose or arrangement, an oral contract to sell will not be established. It was therefore incumbent upon the Hinkles to show conduct that was consistent solely with the existence of a land sale contract and not with any other arrangement. The Hinkles had the burden of proving the existence of the oral contract by clear and convincing evidence. *Johnson v. Albert,* 67 Idaho 44, 45, 170 P.2d 403, 403 (1946); *Wing v. Munns,* 123 Idaho 493, 498 n. 2, 849 P.2d 954, 959 n. 2 (Ct.App.1992), *aff'd,* 123 Idaho 463, 849 P.2d 924 (1993).

 Here the district court heard the conflicting testimony of the Hinkles and the Wineys. While the Hinkles asserted that they had entered into an agreement with David Winey to purchase the real estate for $150,000 by assuming the underlying mortgage and paying the balance in monthly payments, the Wineys consistently testified that although they had offered the property to the Hinkles for $150,000 and various terms were discussed, no agreement was ever reached and the Hinkles were never able to procure financing for the entire $150,000. The Wineys testified that they leased the premises to the Hinkles for a six-month period during which time the Hinkles were to attempt to obtain financing for the entire purchase price of $150,000.

No testimony by the Hinkles or the Wineys indicates that the Hinkles took any action regarding the premises other than their moving into the residence, operating the bakery and making payments to the Wineys. No valuable improvements were made to the premises other than some minor repairs. The testimony of the Hinkles and the Wineys indicates that the Wineys either made those repairs or provided materials for the repairs. This is inconsistent with ownership by the Hinkles. The monthly payments from the Hinkles were consistent with the Wineys' contention that the premises were rented, not sold.

In its findings of fact, the district court specifically stated that it found that Mary Ellen Hinkle's testimony was unreliable and that Marvin Hinkle's testimony did little to advance the plaintiffs' case. It is apparent from the record that both party's versions of the events at issue were presented to the district court and supported by diametrically opposing evidence. It was thus necessary for the district court to make credibility determinations. Those determinations and the resulting findings of fact are supported by substantial, though controverted, evidence and will not be overturned on appeal.

## V. ORDER TO VACATE PREMISES

■ The district court's opinion and order issued on September 14, 1993, included an order that the Hinkles vacate the premises on or before September 30, 1993. The Hinkles argue that this order was in violation of the one-month notice requirement of I.C. § 55–208 and thus should be voided by this Court.

This contention is without merit. The provisions of I.C. § 55–208 govern procedures to be followed by landlords in terminating a tenancy at will. The statute has no application to court orders directing a party to vacate premises.

## VI. MONEY JUDGMENT

The Hinkles also complain that paragraph four of the judgment entered at the conclusion of this action is incorrect in that it orders that the Hinkles pay to the Wineys $800 in partial rent for the month of May 1992, and $2,200 for "two months not accounted for in the interim order." This portion of the judgment, they contend, is unsupported by any findings of fact or evidence in the record. It appears that this portion of the judgment was in error in that it awards

rent for a period when the Hinkles were not in possession of the bakery premises due to the Wineys' self-help eviction. During oral argument in this case, counsel for the Wineys indicated that they would concede this issue and consent to reversal of this entire monetary award. We therefore remand the case for consideration of such waiver and for deletion from the judgment of any award for rents referable to the period when the Hinkles were not in possession.

## VII. CONCLUSION

The district court did not abuse its discretion in declining to allow the Hinkles to amend their complaint, nor did the court exceed its authority by ordering that interim payments be made by the Hinkles. The district court's findings of fact are adequate and are supported by substantial and competent evidence. The order requiring the Hinkles to vacate the premises on less than one month's notice was not violative of I.C. § 55–208. The judgment is in error, however, insofar as it made an award to the Wineys for rental during the period when the Hinkles were locked out of the premises. Therefore, we vacate that portion of the judgment that awards $3,000 to the Wineys for unpaid rent and remand this matter to the district court for entry of an amended judgment deleting that monetary award.

The parties shall bear their respective costs on appeal.

WALTERS, C.J., and PERRY, J., concur.