944 P.2d 695

**LeRono Dee QUIRING, Plaintiff–
Appellant,**

v.

**Lynn Ann QUIRING, Defendant–
Respondent.**

No. 23353.

Supreme Court of Idaho,
Boise, May 1997 Term.

Sept. 2, 1997.

Ismael Chavez, Caldwell, for Plaintiff–Appellant.

Richard L. Harris, Caldwell, for Defendant–Respondent.

SCHROEDER, Justice.

This dispute involves whether an agreement and quitclaim deed entered into by a husband and wife in contemplation of divorce is valid and enforceable, whether the magistrate erred in his findings and conclusions, and whether the magistrate abused his discretion by allowing testimony to contradict untimely denied requests for admissions.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

LeRono Quiring (Ron) and Lynn Ann Quiring (Lynn) were married August 4, 1985, in Reno, Nevada. The couple divorced in August of 1995. Prior to their divorce the

couple experienced marital discord and on two occasions separated. The final event precipitating their divorce occurred on July 11, 1994, when the couple's daughter (Lynn's natural daughter and Ron's adopted daughter) allegedly reported to Lynn that Ron had committed sexual improprieties with her five years prior. The record does not reveal the nature of these alleged improprieties. These events gave rise to a criminal indictment and charge which was later dismissed.

When Ron arrived at home on July 11, 1994, the locks had been changed. That evening, Lynn confronted him with the allegations of sexual improprieties. She presented a quitclaim deed for him to sign to the couple's community real property consisting of the family residence on Robinson Road (Robinson Property). The Robinson Property was originally Ron's separate property, but in May of 1990 he had quitclaimed the property to Lynn and him as their community property. The Robinson Property was assessed in 1995 as having a fair market value of $139,275.00. The indebtedness owing against the property on August 17, 1994, was $45,253.78. To obtain refinancing, the property was reappraised at $204,100.00 some time after the couple separated. Ron claims that Lynn threatened she would inform the police and Ron's employer of the allegations if he refused to sign the quitclaim deed. Lynn denies that she made such a threat. Ron also claims that Lynn threatened that her father and her daughter's biological father would "get" Ron. Lynn also denies that she made this threat.

Ron denied the allegations of sexual impropriety and left to spend the evening elsewhere without signing the quitclaim deed. The next day, Ron went to his job with the Idaho Department of Health and Welfare where he taught juveniles committed to secure confinement. He telephoned Lynn from work. According to Ron, Lynn told him that if he did not sign the quitclaim deed she would have him arrested at his place of work. During breaks at work, Ron drafted a handwritten agreement (Agreement) with the following provisions:

I do hereby relinquish interest in my residence located at 1009 N. Robinson, Nampa, Idaho 83687 for the following considerations:

1) That any and all past differences be forgotten and not brought up by Lynn or either of the two children, [daughter], age 15 and [son], age 17.

2) That we part amicably with no further contact other than details of the divorce.

3) There is to be, as agreed, no other compensation to be given by me in any form including support for the children or my wife as the amount of equity in the house shall be considered to be quite sufficient to more than compensate for any deficiency of support until the children reach the age where no further support is required.

4) It is agreed between Ron Quiring and Lynn Quiring, husband and wife, that a divorce is pending and details of personal items within the house will be agreed upon separately.

Ron telephoned his attorney and read the Agreement to him. His attorney advised him not to sign anything. Ron then called Lynn and arranged to meet her to discuss their community debt and child support. They met and talked for approximately one-half hour about the division of property and debts. Then they went to Stewart Title Company in Nampa. Ron presented Lynn with the Agreement and told her that she would have to sign the Agreement before he would sign the quitclaim deed. The parties read and signed the Agreement in the presence of a Stewart Title notary public and closing officer. Ron also signed and had notarized the quitclaim deed conveying his interest in the Robinson Property to Lynn. The quitclaim deed was recorded the next day. The deed listed $800.00 as the value received by Ron.

Ron filed for divorce on July 28, 1994, praying for a decree of divorce and that Lynn be awarded physical and legal custody of their daughter. Although Ron and Lynn had executed the Agreement and Ron had signed the quitclaim deed setting forth a settlement of property and support rights, Ron's complaint prayed for "child support as provided by the Idaho Child Support Guidelines or as the Court may otherwise deem

appropriate," and stated that "[t]he parties hereto have agreed to and will execute a *Property Settlement Agreement* and the same should be incorporated into the Court's decree. In the event either party fails to execute the Agreement, then the community property and community debts should be equitably distributed." Lynn answered, denying that the parties had agreed to execute a Property Settlement Agreement. Despite the Agreement and quitclaim deed, Lynn prayed "[t]hat the Court make an equitable distribution of the parties [sic] community property and community debts" and that Ron be ordered to "pay for [child] support . . . as provided by the Idaho Child Support Guidelines or as the Court may otherwise deem appropriate."

At the time of trial, Lynn had quit her job at Micron, which had paid approximately $1,200 per month and had remarried. Ron had been fired as a teacher and was working on commission for Squat Down Manufacturing Corporation out of Anadarko, Oklahoma, but had yet to make a first sale.

Prior to determining property distribution, custody and support, the trial court granted the divorce. Subsequently, the magistrate determined that the real property contained in the quitclaim deed was Lynn's sole and separate property and that no support was to be ordered, though Lynn could seek a modification to secure support if the equity in the home was inadequate.

Ron appealed to the district court, alleging that the magistrate erred by allowing Lynn to present trial testimony contradicting allegations contained in requests for admissions which were denied untimely and by failing to make certain factual findings. Ron also appealed the magistrate's legal conclusion that the quitclaim deed and Agreement were valid and binding, asserting that they were entered into upon undue influence, coercion and duress. The district court affirmed the magistrate's decision and awarded Lynn costs and attorney fees on appeal, finding that Ron's appeal was frivolous.

## II.

### STANDARD OF REVIEW

Where, as here, the issue presented was first decided in the magistrate division of the district court and was appealed to the district court, this Court reviews the magistrate's decision independent of, but with due regard for, the district court's appellate decision. *Toyama v. Toyama*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996). When reviewing decisions of the trial court, the Court will uphold findings of fact which are supported by substantial and competent evidence. *Rohr v. Rohr*, 128 Idaho 137, 140, 911 P.2d 133, 136 (1996). The trial court's discretionary decisions will be upheld absent a showing that the court abused its discretion. *Id.; Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995). When an exercise of discretion is reviewed on appeal, the Court inquires: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by exercise of reason. *Noble*, 126 Idaho at 888, 894 P.2d at 121; *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). With respect to the trial court's conclusions of law, this Court exercises free review. *Hummer v. Evans*, 129 Idaho 274, 279, 923 P.2d 981, 986 (1996).

## III.

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ALLOWING THE PRESENTATION OF EVIDENCE TO CONTRADICT UNTIMELY DENIED REQUESTS FOR ADMISSION BECAUSE RON FAILED TO SHOW THAT HE WAS PREJUDICED.**

On February 1, 1996, Ron submitted Requests for Admissions asking that the following statements be admitted or denied: (1) that on July 11, 1994, Lynn alleged that Ron had committed sexual improprieties with their daughter, (2) that on that date Lynn changed the locks to the residence, (3) that on that date Lynn informed Ron that if he did not sign the quitclaim deed she had prepared and presented to him, he would be

arrested, and (4) that on that date Lynn informed Ron that her father and the childrens' biological father were going to "get" Ron. These Requests were denied in a response filed on February 28, 1996, which was untimely. At trial the magistrate ruled that the requests were admitted but that Lynn could present contradictory testimony, stating the following:

> THE COURT: All right, I'm going to order that they will be admitted at this point in time.
>
> Obviously, Mr. Harris, you're not precluded from presenting any testimony to the contrary.

Idaho Rule of Civil Procedure 36(a) provides:

> Each matter of which an admission is requested shall be separately set forth. *The matter is admitted unless, within 15 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter....*

I.R.C.P. 36(a) (emphasis added).

I.R.C.P. 36(b) provides:

> Any matter admitted under this rule is *conclusively established* unless the court *on motion* permits withdrawal or amendment of the admission.... [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining an action or defense on the merits.

I.R.C.P. 36(b) (emphasis added).

■ Whether to permit withdrawal or amendment of an admission is a matter committed to the discretion of the court. I.R.C.P. 36(b). This is the rule in the federal system with respect to F.R.C.P. 36(b) where the trial court's decision to permit the withdrawal or amendment of an admission is reviewed for abuse of discretion. *999 v. C.I.T. Corp.,* 776 F.2d 866, 869 (9th Cir.1985); *American Auto. Ass'n v. AAA Legal Clinic,*

930 F.2d 1117, 1119 (5th Cir.1991). The conclusiveness of matters admitted pursuant to F.R.C.P. 36(b) applies equally to admissions made affirmatively and those made by default. *American Auto.,* 930 F.2d at 1120. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. *Id.* The reasoning of these cases is persuasive and consistent with this Court's view of I.R.C.P. 36(b). The trial court allowed Lynn to contradict the admissions rather than treating the matters admitted as being conclusively established as provided for in I.R.C.P. 36(b). It is necessary to determine if this was a proper exercise of discretion.

Two requirements must be met before an admission may be amended or withdrawn pursuant to Rule 36(b): (1) presentation of the merits must be promoted, and (2) the party who obtained the admission must not be prejudiced by the withdrawal. I.R.C.P. 36(b). Neither the magistrate nor the district court made a finding or ruled that the merits of this case would be promoted by withdrawing or amending the admissions.

The Ninth Circuit has said that the first half of the Rule 36(b) test is "satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States,* 45 F.3d 1345, 1348 (1995). Issues in this case turn upon whether Lynn wrongfully, through the use of threat, obtained Ron's assent to the Agreement and quitclaim deed. Consequently, presentation of the merits was promoted by admitting testimony to contradict the untimely denied Requests for Admission.

■ "Prejudice" as contemplated in F.R.C.P. 36(b) is " 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Hadley,* 45 F.3d at 1348 (quoting *Brook Vil-*

*lage N. Assoc. v. General Elec. Co.,* 686 F.2d 66, 70 (1st Cir.1982)). "The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case." *Id.* Again, these federal decisions are persuasive and consistent with I.R.C.P. 36(b).

The Court determined that no prejudice had occurred in *Vannoy v. Uniroyal Tire Co.,* 111 Idaho 536, 726 P.2d 648 (1985), where, "[j]ust prior to trial, the plaintiffs made a motion to have the requests for admissions 'discarded.'" Id. at 544, 726 P.2d at 656. In that case, "statements in depositions and interrogatories set out plaintiffs' position which adequately denied the substance of the requests for admissions submitted by the association." *Id.* Similarly, in the Ninth Circuit, "[c]ases finding prejudice to support a denial generally show a ... [high] level of reliance on the admissions." *Hadley,* 45 F.3d at 1349. Where the motion for withdrawal is not made until the middle of the trial, prejudice has been found. *Id. See 999,* 776 F.2d at 869.

On the first day of trial Ron's attorney requested that the statements made in the Requests for Admissions be admitted. Lynn's counsel responded:

> All I can suggest, Judge, is that I have filed a response. I don't see that the defense in this case is any way prejudiced by the response that I filed. I have admitted to the facts of almost all of the request for the admissions filed. I think in response there were, I think, two denials, with an explanation of what the denial was based upon.

Ron's attorney responded:

> As I said, Judge, my request for admission went out February 1st. I did not receive a response until February 28th. And I prepared my case based on an untimely response of the defendant. So I'm here prepared under those circumstances.... I did not get a response [until] ... three days before trial. So I'm here, as I say, prepared to proceed under those assumptions as I stated in my memorandum. I don't care what his response is on the 28th, Judge.

These statements by Ron's attorney do not show the requisite level of prejudice contemplated by I.R.C.P. 36(b). Ron has failed to carry his burden of showing that he would be faced with difficulty in proving his case due to unavailability of key witnesses or any other commensurate burden. *Hadley,* 45 F.3d at 1348. Ron was able to put on evidence that Lynn had threatened him. In fact the magistrate found that "[t]he Defendant informed the Plaintiff that if he signed the deed that she would not call the police and that the Plaintiff would not lose his job." Ron was not prejudiced by the decision to allow contrary testimony.

## IV.

### THE MAGISTRATE'S FINDINGS ARE NOT CLEARLY ERRONEOUS.

Ron claims that the magistrate erred by failing to make three findings: (1) that the magistrate should have found that the parties took personal property subject to encumbrances, (2) that the magistrate should have found that Lynn reported the alleged sexual improprieties to the Canyon County Sheriff, and (3) that the magistrate should have found that Lynn owed Ron fidelity and devotion and that she "cuckolded" him.

■ Idaho Rule of Civil Procedure 52(a) requires that, in rendering a decision in an action tried without a jury, the trial court must set forth separately its findings of fact and conclusions of law. I.R.C.P. 52(a). The purpose of this rule is to "afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case." *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Only where the basis of the court's ruling clearly appears from the record may this requirement of specific findings be disregarded by the appellate courts. *Id.*

■ It was not error for the magistrate to fail to state, *verbatim,* in findings of fact that the parties took personal property subject to encumbrances. It is clear from the findings that the "parties stipulated to the division of

the remainder of the community personal property and the value of the item being transferred." In addition, the encumbrances Ron speaks of are referred to in the findings of fact.

It is also clear from the record that Lynn called the sheriff's department. In response to a question on direct examination, "What led you up to calling [Officer] Heady?" Lynn responded: "There was a card on my door that said, please call me." Counsel then asked, "And so you did then make that phone call?" Lynn responded: "I did make the call to his office." The fact that Lynn called the sheriff's office and under what circumstances is clear in the record.

Furthermore, it was not error for the magistrate to omit finding that Lynn owed Ron a duty of fidelity and devotion and that she "cuckolded" him. Assuming, *arguendo*, that these are factual inquiries, the specificity of the trial court's findings required by I.R.C.P. 52(a) is not that every factual dispute between the parties must be resolved but, rather, the court's findings need address only those factual issues that are material to resolution of the claims. *In re Estate of Lewis,* 97 Idaho 299, 302, 543 P.2d 852, 855 (1975); *Yreka United, Inc. v. Harrison,* 95 Idaho 430, 433–34, 510 P.2d 775, 778–79 (1973); *Hinkle v. Winey,* 126 Idaho 993, 999, 895 P.2d 594, 600 (Ct.App. 1995).

Ron also claims that the following findings were in error: (1) that Ron "was certain the marriage was over;" (2) that Ron was aware that the equity in his home would be required to pay bills, support himself and his children; and (3) that Ron "freely executed [the quitclaim deed] after he required [Lynn] to execute [the Agreement]." The Agreement is contained in the record and was drafted by Ron in his own handwriting. That document provides: "It is agreed between Ron Quiring and Lynn Quiring, husband and wife, that a divorce is pending." There is evidence in the record to support the finding that Ron was aware the marriage was over. In any case, what difference it makes is unclear. *In re Estate of Lewis,* 97 Idaho at 302, 543 P.2d at 855; *Yreka United,*

95 Idaho at 433–34, 510 P.2d at 778–79; *Hinkle,* 126 Idaho at 999, 895 P.2d at 600.

Ron also argues that it was error to find that he was aware that the equity in his home would be required to pay bills, support himself and his children. The language in the Agreement contradicts Ron's argument, providing the following:

There is to be, as agreed, no other compensation to be given by me in any form including support for the children or my wife as the amount of equity in the house shall be considered to be quite sufficient to more than compensate for any deficiency of support until the children reach the age where no further support is required.

The finding that Ron freely executed the quitclaim deed after he required Lynn to execute the Agreement is addressed in the next section.

## V.

## THE AGREEMENT AND QUITCLAIM DEED ARE ILLEGAL AND UNENFORCEABLE.

Whether a contract is against public policy is a question of law for the court to determine from all the facts and circumstances of each case. *Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 840 (1952). Public policy may be found and set forth in the statutes, judicial decisions or the constitution. *Id.* at 287, 240 P.2d at 842. An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy. 17A Am.Jur.2d *Contracts* § 239; *see Miller v. Haller,* 129 Idaho 345, 924 P.2d 607 (1996). A contract prohibited by law is illegal and hence unenforceable. *Miller,* 129 Idaho at 351, 924 P.2d at 613.

Although not clearly argued below or addressed in either the magistrate's decision or the district court, in Idaho a court may not only raise the issue of whether a contract is illegal *sua sponte, Nab v. Hills,* 92 Idaho 877, 882, 452 P.2d 981, 986 (1969); *Belt v. Belt,* 106 Idaho 426, 430 n. 2, 679 P.2d 1144, 1148 n. 2 (Ct.App.1984), but it has a duty to raise the issue of illegality, whether

pled or otherwise, at any stage in the litigation. *Stearns*, 72 Idaho at 290, 240 P.2d at 842.[1] As the Court in *Stearns* explained:

> A party to a contract, void as against public policy, cannot waive its illegality by failure to specially plead the defense *or otherwise*, but *whenever the same is made to appear at any stage of the case*, it becomes *the duty of a court to refuse to enforce it;* again, a court of equity will not knowingly aid in the furtherance of an illegal transaction; in harmony with this principle, it does not concern itself as to the manner in which the illegality of a matter before it is brought to its attention.

*Id.* (emphasis added) (citation omitted).

 The record reveals that Ron's acquiescence in the quitclaim deed was supported by Lynn's acquiescence in the Agreement. The Agreement is unenforceable because it is against public policy in two respects. First, Lynn may not contract to refrain from informing law enforcement regarding the allegations of sexual improprieties with a child. Section 16–1619 of the Idaho Code provides:

> **Reporting of abuse, abandonment or neglect.**—(a) Any physician, resident on a hospital staff, intern, nurse, coroner, school teacher, day care personnel, social worker, *or other person* having reason to believe that a child under the age of eighteen (18) years has been abused, abandoned or neglected or who observes the child being subjected to conditions or circumstances which would reasonably result in abuse, abandonment or neglect *shall report or cause to be reported within twenty-four (24) hours* such conditions or circumstances to the proper law enforcement agency or the department.
>
> . . . .
>
> (d) Failure to report as required in this section shall be a misdemeanor.

I.C. § 16–1619(a), (d) (emphasis added) .

The only exception to this directive is for clergy. I.C. § 16–1619(c). According to the plain language of I.C. § 16–1619, Lynn had a statutory duty to report the allegations. A contract provision obligating her to transgress this obligation is contrary to public policy.

Second, the quitclaim deed conveying the Robinson Property to Lynn was based on consideration enumerated in the Agreement. It was Ron's testimony that the first paragraph of the Agreement meant Lynn would not report the alleged improprieties to the police. Although Lynn testified that "past differences" in the first paragraph of the Agreement entailed a range of difficulties, she also gave the following testimony as to her understanding of the parties' intended meaning of the phrase "past difficulties":

> *[I] think he didn't want me to say anything about what happened between [our daughter] and he also.* I think that was another one.

Obtaining the transfer of property by a threat of arrest or exposure to hatred, contempt or ridicule is theft by extortion and violates I.C. § 18–2403:

> A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: . . . (4) Accuse some person of a crime or cause criminal charges to be instituted against him; or (5) Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule. . . .

I.C. § 18–2403(2)(e).

It makes no difference whether the threat of arrest was a lawful or unlawful arrest. *Wilbur v. Blanchard,* 22 Idaho 517, 519, 126 P. 1069, 1071 (1912). Both the magistrate and the district judge found that Lynn had threatened Ron with arrest if he did not sign

---

1. The district court did just this when it discussed legality in the context of whether contracts between spouses in contemplation of divorce are illegal:

 These types of agreements are not illegal; Idaho Code § 32–916 and I.C. § 32–917 allow marriage settlement agreements.

 While the district judge failed to address the larger issues of illegality involved in this case, his discussion nonetheless shows that he felt he could opine on whether or not the contract was illegal.

the quitclaim deed: "The Defendant informed the Plaintiff that if he signed the deed that she would not call the police and that the Plaintiff would not lose his job." The magistrate and district court's conclusions that follow are at odds with this factual finding.

In *Stearns* the Court said:

The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward such an evil; if it is opposed to the interest of the public, or has a tendency to offend public policy, it will be declared invalid, even though the parties acted in good faith and no injury to the public would result in the particular instance; the test to be applied is not what is actually done but that which may or might be done under the terms of the contract; it is the evil tendency of the contract and not its actual injury to the public that is determinative, as the law looks to its general tendency and closes the door to temptation by refusing to recognize such agreements.

72 Idaho at 283, 240 P.2d at 839 (citation omitted).

In this case the "evil tendency" to be avoided by refusing to enforce the Agreement is injury to the purposes of I.C. §§ 16–1619 and 18–2403. It makes no difference whether the police were eventually notified of the alleged sexual improprieties or whether the allegation is ever publicly exposed. It also makes no difference whether division of the property through means of extortion may in fact be an equitable division of the property. The Agreement is illegal. Transfer of the quitclaim deed was premised on illegal consideration. The quitclaim deed was obtained through extortion, threats of violence and public exposure to cause loss of employment.

 Illegal contracts are void. *Miller*, 129 Idaho at 351, 924 P.2d at 613; *see* 17A Am Jur 2d *Contracts* § 304. A void contract cannot be enforced. *Miller*, 129 Idaho at 351, 924 P.2d at 613; *Wheaton v. Ramsey*, 92 Idaho 33, 436 P.2d 248 (1968). A

party to an illegal contract cannot ask the Court to have his illegal objects carried out, as the law will not aid either party to an illegal agreement, but leaves the parties where it finds them. *Ingle v. Perkins*, 95 Idaho 416, 510 P.2d 480 (1973); *Whitney v. Continental Life & Accident Co.*, 89 Idaho 96, 403 P.2d 573 (1965); *Worlton v. Davis*, 73 Idaho 217, 249 P.2d 810 (1952); *Hancock v. Elkington*, 67 Idaho 542, 186 P.2d 494 (1947). Accordingly, the magistrate's decision distributing property according to the Agreement is reversed. The determination that Lynn acquired sole title to the Robinson Property through the quitclaim deed is reversed. The case is remanded for an equitable division of the property and determination of child support.

## VI.

## CONCLUSION

The magistrate's decision regarding the enforceability of the Agreement and the validity of the quitclaim deed is reversed and this matter is remanded for an equitable distribution of property and determination of child support.

The district court's award of attorney fees to Lynn is reversed. Ron is awarded costs on appeal. No attorney fees are awarded.

JOHNSON, McDEVITT* and SILAK, JJ., concur.

TROUT, C.J., concurs in result of PART III.

* Justice McDEVITT participated in this decision prior to his resignation.